WILLIAM AKAU, JR., SOLOMON AKAU, ALIKA COOPER and THOMAS KEALIIHELEMAUNA KEALANAHELE, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees, *v.* OLOHANA CORPORATION, RICHARD SMART, MAUNA KEA BEACH HOTEL CORPORATION, LURLINE B. ROTH, LAURENCE S. ROCKEFELLER, THE QUEEN'S MEDICAL CENTER, Defendants-Appellants, THE COUNTY OF HAWAII and THE STATE OF HAWAII, Defendants-Appellees

NO. 7275

(CIVIL NO. 3072)

OCTOBER 28, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
CIRCUIT JUDGE CHANG AND RETIRED JUSTICE OGATA,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY RICHARDSON, C.J.

Plaintiffs Akau and others brought this class action to enforce alleged rights-of-way along once public trails to the beach that cross original defendants'[1] property in Kawaihae on the Big Island of Hawaii. The court below ruled that plaintiffs have standing to assert the rights of the public, and certified the suit as a class action. We affirm.

I.

The named plaintiffs have lived or fished in Kawaihae for many years. They represent two subclasses; one contains Hawaii residents who used or were deterred from using the trails, the other contains all persons who own land or reside in the area and used or were deterred from using the trails. The original defendants were land-

---

[1] After briefs were filed in this court and before oral argument, all defendants except Roth settled all claims with plaintiffs and the State. Roth is the only defendant pursuing this appeal although the State is still a party.

owners or tenants who possess the beachfront land between Spencer Beach Park and Hapuna Beach Park, a span of about two and a half miles along the beach. They had barred all public access across their land to the public beach since acquiring the land in 1954.

Two of the trails in issue run roughly parallel to the beach between the two parks. They have existed since before the turn of this century. The Kamehameha Trail is at most points very close to the water and at others about 100 yards away. The Kawaihae-Puako Road is about 150 yards further upland. There are also eleven intersecting trails that run from the main trails to the shore. Plaintiffs allege that these trails had been used by the public until 1954.

The Territory of Hawaii owned the land between the two parks until it was sold to Richard Smart in 1954. The parcel consisting of the Kawaihae-Puako Road was also sold to Smart at that time. Smart conveyed all his land by deed or lease, and all the original defendants were owners or lessees of that land.

Plaintiffs claim that the trails have been and are public rights-of-way and ask for declaratory and injunctive relief to that effect. The eight theories plaintiffs rely on are 1) HRS § 7-1;[2] 2) ancient Hawaiian custom, tradition, practice and usage; 3) common law custom; 4) easement by implied dedication; 5) easement by prescription; 6) easement by necessity; 7) easement by implied reservation; and 8) easement through public trust. The State was made a nominal defendant to protect the interests of the public. Its position, however, is in support of plaintiffs in this appeal.

Defendants' motion to dismiss for failure to state a claim was denied. Instead of proceeding with further discovery and a trial, the lower court granted leave to file this interlocutory appeal.

---

[2] HRS § 7-1 reads:

Building materials, water, etc.; landlords' titles subject to tenants' use. Where the landlords have obtained, or may hereafter obtain, allodial titles to their lands, the people on each of their lands shall not be deprived of the right to take firewood, house-timber, aho cord, thatch, or ki leaf, from the land on which they live, for their own private use, but they shall not have a right to take such articles to sell for profit. The people shall also have a right to drinking water, and running water, and the right of way. The springs of water, running water, and roads shall be free to all, on all lands granted in fee simple; provided, that this shall not be applicable to wells and water-courses, which individuals have made for their own use.

## II.

We address the standing issue first. All of plaintiffs' theories are based on rights that accrue to them as members of the public, except perhaps easement by necessity and prescription. These easements might be public depending on the facts brought out at trial.

### A.

Defendant argues that only the State may bring an action against landowners to enforce the public's right of beach access. This proposition can be traced to the general rule in the law of public nuisance that a private individual has no standing to sue for the abatement of a public nuisance if his injury is only that which is shared by the public generally. *Holloway v. Bristol-Myers Corp.*, 327 F. Supp. 17 (D.D.C., 1971); W. Prosser, Law of Torts § 88, at 583 (4th ed. 1971). Obstruction of the public right of way is a public nuisance. *City of Nampa v. Swayne*, 97 Idaho 530, 547 P.2d 1135 (1976).

This rule developed in the early common law because harm to the public order, decency or morals was considered a crime against the king. *See* Prosser, *Private Action for Public Nuisance*, 52 Va. L.R. 997 (1966). Only the king, therefore, could bring an action against the perpetrator. The sole exception to this rule was that a member of the public had standing to sue if he suffered a special injury that was different in kind, and not merely in degree, from the general public. *See e.g., Hardy Salt v. Southern Pac. Transp. Co.*, 501 F.2d 1156 (10th Cir. 1974). The purpose of the rule is to prevent a multiplicity of actions and frivolous suits.

There is a trend in the law, however, away from focusing on whether the injury is shared by the public, to whether the plaintiff was in fact injured.[3] This trend began, not in nuisance, but in taxpayer suits. The general rule had been that a plaintiff had no

---

[3] Restatement, Second, Torts § 821C(2) states: "In order to maintain a proceeding to enjoin to abate a public nuisance, one must . . . (c) have standing to sue as a representative of the general public, as a citizen in a citizen's action or as a member of a class in a class action." See also, Berger, *Standing to Sue in Public Actions: Is It a Constitutional Requirement?*, 78 Yale L.J. 816 (1969); Note, *Public Nuisance: Standing to Sue Without Showing "Special Injury"*, 26 U. Fla. L.R. 360 (1974).

standing to challenge an improper government act based solely on his status as a taxpayer. *Frothingham v. Mellon,* 262 U.S. 447 (1923). In these actions, like nuisance, the harm was considered to be to the public generally and no one suffered any direct harm to himself. In *Flast v. Cohen,* 392 U.S. 83 (1968), the Court rejected the special injury requirement where the harm was that Congress had violated a specific constitutional limitation on its spending power. Many states have since greatly liberalized taxpayer standing beyond the federal rule and allow taxpayer suits against any improper expenditure of public funds without need to show special injury to the plaintiff. *Cunningham v. Exon,* 202 Neb. 563, 276 N.W.2d 213 (1979); *Farley v. Cory,* 78 Cal. App.3d 583, 144 Cal. Rptr. 923 (1978); *City of Tacoma v. O'Brien,* 85 Wash.2d 266, 534 P.2d 114 (1975); *Lord v. City of Wilmington,* 332 A.2d 414 (Del. ch. 1975); *Hanson v. Mosser,* 247 Or. 1, 427 P.2d 97 (1967). This court has allowed standing for taxpayers who allege an unconstitutional expenditure of public funds. *Bulgo v. County of Maui,* 50 Haw. 51, 430 P.2d 321 (1967); *Castle v. Secretary of the Territory,* 16 Haw. 769 (1905).

The courts have also broadened standing in actions challenging administrative decisions. The U.S. Supreme Court has granted standing where plaintiffs allege environmental harm even though plaintiffs' harm is equally shared by a large segment of the public. *United States v. SCRAP,* 412 U.S. 669 (1973). In *In re Hawaiian Electric Co.,* 56 Haw. 260, 535 P.2d 1102 (1975) we granted standing to utility users who challenged a Public Utility Commission's approval of rate increases, although plaintiffs shared the additional rate with all other users. We have also broadly construed standing in other administrative law cases.[4] *See Life of the Land v. Land Use Commission,* 63 Haw. 166, 623 P.2d 431 (1981); *Waianae Model Neighborhood Area Association, Inc. v. City and County of Honolulu,* 55 Haw. 40, 514 P.2d 861 (1973).

Claims of harm to public trust property is another area where courts are expanding standing. *Besig v. Friend,* 463 F. Supp. 1053 (N.D. Cal. 1979); *Paepcke v. Public Building Commission,* 46 Ill.2d 330, 263 N.E.2d 11 (1970). In *Marks v. Whitney,* 6 Cal.3d 251, 98 Cal.

---

[4] We use the administrative law cases here as analogy only and do not intend this case to affect the sizable body of law on the standing issue in such cases which are interpretations of the definition of an "aggrieved party" in HRS § 91-14.

Rptr. 790, 491 P.2d 374 (1971), the California Supreme Court granted standing to an individual who sued a private property owner claiming that the owner was obstructing use of public tidelands. In an implied dedication case, *Dietz v. King*, 2 Cal.3d 29, 84 Cal. Rptr. 162, 465 P.2d 50 (1970), the court granted standing to individuals representing a class who sued a private landowner to enforce a public right to use a beach access route across his property.

This court has been in step with the trend away from the special injury rule towards the view that a plaintiff, if injured, has standing. In *Life of the Land v. Land Use Commission, supra*, we said:

> Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated. And the crucial inquiry in its determination is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of . . . [the court's] jurisdiction and to justify exercise of the court's remedial powers on his behalf." [Citation omitted.]

63 Haw. at 172, 623 P.2d at 438.

We concur in this trend because we believe it is unjust to deny members of the public the ability to enforce the public's rights when they are injured. "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 5 U.S. 87, 102 (1803).

Another reason for allowing liberal standing is that the danger of a multiplicity of suits is greatly alleviated by a proper class action. A judgment in a class action consisting of the people actually injured will bind the members who are all those allowed to sue. This will also prevent inconsistent judgments.[5]

We hold, therefore, that a member of the public has standing to sue to enforce the rights of the public even though his injury is not different in kind from the public's generally, if he can show that he has suffered an injury in fact, and that the concerns of a multiplicity

---

[5] In a case which reaffirmed the necessity of a special injury in a public nuisance case similar to the case at bar, the court stated "We again exclude from this rationale a proper class action." Askew v. Hold the Bulkhead — Save Our Bays, Inc., 269 So.2d 696, 697, n.2 (Fla. Dist. Ct. App. 1972).

of suits are satisfied by any means, including a class action.

We turn next to whether plaintiffs here have suffered an injury in fact. We first define the term. In *Life of the Land v. Land Use Commission, supra,* we stated:

> There has been an unmistakable parallelism in the substance of our standing decisions involving the particular interests Life of the Land seeks to protect and in the substance of related federal decisions. [Citation omitted]. While the term "injury in fact" may not appear in their text, our decisions have afforded standing on a basis at least coextensive with federal doctrine where harm to such interests has been alleged.

63 Haw. at 176, 623 P.2d at 441. The United States Supreme Court has summarized its decisions on injury in fact as follows:

> Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, *Gladstone, Realtors v. Village of Bellewood,* 441 U.S. 91, 99 (1979), and that the injury "fairly can be traced to the challenged action," and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41 (1976) [footnote omitted].

*Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S. Ct. 752, 758 (1982).

Courts generally examine the injury question by looking at the interest being injured and seeing whether a favorable decision will benefit plaintiffs. Injury in fact has always included harm to economic interests. *Data Processing Service v. Camp,* 397 U.S. 150 (1970); *Hardin v. Kentucky Utilities Co.,* 390 U.S. 1 (1968). The Court has recently expanded injury to include harm to aesthetic and recreational values. *United States v. SCRAP,* 412 U.S. 669 (1973); *Sierra Club v. Morton,* 405 U.S. 727 (1972). In SCRAP the injury was difficult to measure. The Court there explained that it

> was asked to follow a far more attenuated line of causation to the eventual injury of which the appellees complained — a general rate increase [on railroad freight charges] would allegedly cause increased use of nonrecyclable goods, thus resulting in the need to use more natural resources to produce such goods, some of which resources might be taken from the Washington area, and resulting in more refuse that might be discarded in national

parks in the Washington area.
412 U.S. at 688.

Although the injury was very slight or attenuated in SCRAP, the Court granted standing because the interest to be protected was an accepted one. In *Sierra Club, supra,* the Court held that development in parkland was an injury to a cognizable interest, but denied standing to an environmental organization because it had failed to show that it was among the injured because it did not allege that its members used the endangered area. Thus a plaintiff has standing if he can demonstrate some injury to a recognized interest such as economic or aesthetic, and is himself among the injured and not merely airing a political or intellectual grievance.

In this case, plaintiffs allege that they are prevented from using a public right of way. The resulting difficulty in getting to the beach hampers the use and enjoyment of it and may prevent or discourage use in some instances. This is an injury to a recreational interest similar to the one in *SCRAP* because the ability to get to a recreational area is as vital for enjoying it as having it in its natural condition.

We are convinced, therefore, that plaintiffs have sufficiently alleged that they are among the injured. The class description includes all those who have used or have been deterred from using the trails. Thus all class members have suffered an injury in fact. This meets the requirement of actual injury in *Sierra Club.* The trial court correctly granted plaintiffs' standing.

### B.

Defendant argues that the legislature has precluded private rights of action to enforce public access to beaches by creating a statutory scheme to acquire beach access. We disagree. Although the legislature may limit standing to sue despite an injury in fact where plaintiff asserts rights that arise from a statute, *Cort v. Ash,* 422 U.S. 66 (1975), that limitation does not apply here.

There are two statutes that involve beach access. The Coastal Zone Management Act, HRS ch. 205A, was passed to provide and manage adequate public access to the shore. The Public Access to Beaches Act, HRS ch. 115, authorizes and encourages the counties of the State to acquire public access to the sea by condemnation. The

existence of these laws, however, does not preclude plaintiff's standing. Section 205A-6(e) of the Coastal Zone Management Act states:

Nothing in this section shall restrict any right that any person may have to assert any other claim or bring any other action.

As for ch. 115, plaintiffs are not claiming any rights under a violation of that statute. Their alleged rights are based on custom, necessity, public trust, other non-statutory rights, and HRS § 7-1.[6]

A private suit does not interfere with the statutory scheme. The purpose of these laws is to increase public access,[7] a purpose furthered by this action. In fact, the State in its brief explains that it welcomes private actions to complement the State's activities in securing public beach access because the State lacks the resources to pursue vigorously all possible claims. The statutes, therefore, do not bar this action.

### III.

We turn now to a review of the trial court's ruling certifying the class. The trial court certified two classes under HRCP 23.[8] They are:

*Subclass A*

All residents of the State of Hawaii who in the past have used and enjoyed reasonably, or who have been prevented or deterred by Defendants' actions and conduct from using and enjoying reasonably, the Kawaihae Trail, the Kawaihae-Puako Road and the intersecting trails and paths claimed in the second amended complaint filed in this cause to reach the beaches and tidelands between Hapuna State Beach Park and Samuel Spencer Park.

*Subclass B*

All persons who reside or own property within the ahupuaas

---

[6] HRS § 7-1 grants rights to the people and may be enforced by private action. Palama v. Sheehan, 50 Haw. 298, 440 P.2d 95 (1968); Haiku Plantations Association v. Lono, 1 Haw. App. 263, 618 P.2d 312 (1980).

[7] "The purpose of this chapter is to guarantee the right of public access to the sea and shorelines and transit along the shorelines. . . ." HRS § 115-1.

[8] HRCP 23 is virtually identical to FRCP 23.

of Kawaihae and Ouli who in the past have used and enjoyed reasonably, or who have been prevented or deterred by Defendants' actions and conduct from enjoying and using reasonably the Kamehameha Trail, the Kawaihae-Puako Road and the intersecting trails and paths claimed in Plaintiffs' Second Amended Complaint to reach the beaches and tidelands between Hapuna State Beach Park and Samuel Spencer Park[.]

Defendant argues that class certification was improper because the class definition is too vague and it is hard to tell who is in the class. We note two considerations at the outset. First, the trial court has broad discretion to certify a class and we will overrule only if the court below has misconstrued or misapplied the tests of Rule 23. *Life of the Land v. Land Use Commission,* 63 Haw. 166, 180, 623 P.2d 431, 443 (1981); *Filipo v. Chang,* 62 Haw. 626, 636, 618 P.2d 295, 301 (1980).

The second consideration is that the standards of specificity are lower for Rule 23(b)(2) than Rule 23(b)(3) actions.[9] *Yaffe v. Powers,* 454 F.2d 1362, 1366 (1st Cir. 1972). This is a Rule 23(b)(2) action because plaintiffs are requesting declaratory relief. A 23(b)(2) action requires less specificity than a 23(b)(3) action because only the latter requires individual notice to members and the ability of members to be excluded from the class as described in Rule 23(c)(2).[10]

---

[9] Rule 23(b) reads in part:

*Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

[10] The Committee notes to the 1966 amendment of FRCP 23(b)(2) state: "Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." Fed. Rules Civ. Proc. Rule 23(b)(2), 28 U.S.C.A. *See also* Phillips v. Joint Legislative Committee on Performance and Expenditure Review, 637 F.2d 1014 (5th Cir. 1981) (class upheld for unknown number of unidentifiable future and deterred job applicants); 3B Moore's Fed. Prac. § 23.31(3).

Although Rule 23(b)(2) allows less specificity, there remains the problem that an indefinite class description could include some members who do not have standing. *Vietnam Veterans Against the War v. Benecke,* 63 F.R.D. 675 (W.D. Mo. 1974); *Rappaport v. Katz,* 62 F.R.D. 512 (S.D.N.Y. 1974). Here, however, the class members all have standing because, as described above, all have suffered an injury in fact.

We hold that this class is definite enough to suit the purposes and concerns of Rule 23. The definition is based on specific acts of being prevented from using the trails and one can determine whether an individual is in the class or not. The class is large enough to mollify substantially the fears of a multiplicity of suits, yet there are few problems of manageability since this is a suit for only declaratory and injunctive relief and does not entail disbursing money damages. The class is defined so that all members have standing because the people who had used or had been deterred from using the trails are among the injured. Moreover, this class action is an appropriate method to deal with the problems created by this suit asserting public rights. Accordingly, we find no abuse of discretion.

Affirmed.

*Warren Price III (Barry M. Kurren* with him on the briefs; *Goodsill Anderson & Quinn* of counsel) for defendant-appellant Lurline B. Roth.

*Ben H. Gaddis* (Legal Aid Society of Hawaii) for plaintiff-appellee Thomas K. Kealanahele.

*Andrew Levin* (with *Ben H. Gaddis* on the answering brief) for plaintiffs-appellees William Akau, Jr., Solomon Akau and Alika Cooper.

*William M. Tam,* Deputy Attorney General, for defendant-appellee State of Hawaii.