WAIKIKI DISCOUNT BAZAAR, INC., ISLAND FASHIONS, INC., Hawaii corporations; and WAIKIKI RESIDENTS ASSOCIATION, Plaintiffs-Appellants, and VOICE OF THE PACIFIC, a Hawaii non-profit corporation, Plaintiff, *v.* CITY AND COUNTY OF HONOLULU, a municipal corporation of the State of Hawaii; HOWARD M. SHIMA, Director & Building Superintendent, City & County of Honolulu; GEORGE MORIGUCHI, Director, Department of Land Utilization, City & County of Honolulu; and HEMMETER CENTER COMPANY, a Hawaii Limited Partnership, Defendants-Appellees, and HERTZ CORPORATION, a Delaware corporation; and BUDGET RENT-A-CAR SYSTEMS, INC., a Delaware corporation, Defendants

APPEAL NO. 9646

(CIVIL NO. 55649)

AUGUST 15, 1985

BURNS, C. J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C. J.

Waikiki Discount Bazaar, Inc., and Island Fashions, Inc., (collectively "Waikiki Discount") appeal the lower court's orders denying their oral request for continuance of a hearing and granting summary judgment in favor of Hemmeter Center Company (Hemmeter), the City and County of Honolulu, Howard M. Shima, building superintendent, and George Moriguchi, director of the Department of Land Utilization (collectively "City"). *Sua sponte* we dismiss the appeal because Waikiki Discount did not have standing to bring this case in the lower court or to appeal an adverse summary judgment.

Prior to 1973, Waikiki Discount operated retail dry goods businesses in spaces leased from different owners within the "Biltmore Block"[1] in Waikiki.

On August 22, 1973 in the facilitation of Hemmeter's plans to acquire the Biltmore Block and to construct on it a multi-building complex known as "Hemmeter Center," Waikiki Discount agreed to terminate its existing tenancies upon Hemmeter's request, and Hemmeter, as lessor, and Waikiki Discount, as lessee, agreed to enter into a lease of space in the Hemmeter Center. Subsequently, on August 1, 1975, Waikiki Discount assigned its sublease of space in the "Waikiki Hale"[2] to Hemmeter. In consideration of this assignment, Hemmeter agreed to sublease space to Waikiki Discount in the building to be constructed within the Biltmore Block on the corner of Kalakaua and Uluniu Avenues. Other than letters from Hemmeter to Waikiki Discount confirming their agreements, nothing in the record indicates that Waikiki Discount ever became a lessee in the Hemmeter Center.

On September 11, 1978 Waikiki Discount filed a complaint against the City alleging that Hemmeter, seeking to develop the "Biltmore Block", persuaded Waikiki Discount and other lessees to terminate their leases with other lessors. The complaint, signed by an attorney, further alleged that Hemmeter defaulted on agree-

---

[1] The "Biltmore Block" is that area bounded by Kalakaua, Kaiulani, Uluniu, and Koa Avenues.

[2] "Waikiki Hale" was the name of one of the buildings within the Biltmore Block.

ments with Waikiki Discount and others to provide retail store facilities and other services including validated parking; that a reason for Hemmeter's default was that the City had illegally permitted Hemmeter to obtain building permits for Hemmeter Center without sufficient parking facilities as required by the Comprehensive Zoning Code of the City and County of Honolulu (CZC) (sec. 21-707(f) and (g) );[3] and that the City knowingly permitted Hemmeter to violate unspecified provisions of the CZC and existing fire regulations. As relief, Waikiki Discount sought enforcement of the applicable provisions of the CZC and fire regulations.

Subsequently, the complaint was amended on September 19, 1978 (to attach exhibits) and again on July 31, 1980. The second amended complaint added the Waikiki Residents Association and Voice of the Pacific as plaintiffs and Hemmeter, Hertz Corporation (Hertz), and Budget Rent-A-Car Systems, Inc. (Budget) as defendants.[4] It also added allegations that the City failed to enforce various unspecified fire code provisions by allowing gasoline tanks to be installed in the basement of Hemmeter Center; that Hemmeter Center had 600 fewer parking spaces than required by an unspecified code section; and that because Hemmeter failed to provide retail store facilities, Waikiki Discount was suing to protect its "expectancy interest in the property." Waikiki Discount requested that the court declare the gasoline tanks and parking spaces to be in violation of the applicable regulations; that the gas tanks be removed or brought up to the relevant standards; that

---

[3] Section 21-707, CZC (1969), provides in relevant part:

*Off-Street Parking Requirements.*

Within a H-1 Resort Hotel district, the following specified uses shall comply with the off-street parking requirements designated therefor:

    (f) Eating and drinking establishments accessory to a hotel: at least one space for each 300 square feet of floor area in dining area;

    (g) Meeting rooms and convention hall facilities accessory to a hotel: at least one space per 20 seating capacity.

[4] Waikiki Discount had previously sued Hemmeter alleging breach of promise in Civil No. 47945 on April 1, 1976 and in Civil No. 48907 on July 23, 1976. These suits were subsequently consolidated and the consolidated action is currently pending.

additional parking stalls be constructed or otherwise made available; and that Waikiki Discount be awarded attorney's fees and costs. Both the City and Hemmeter responded, *inter alia,* that Waikiki Discount lacked standing to bring the action.

Hertz's and Budget's motions to dismiss were granted and they were dismissed from the case. Voice of the Pacific withdrew as a plaintiff. Hemmeter and the City each cross-claimed against the other for indemnity.

On August 9, 1982 Waikiki Discount filed a motion for partial summary judgment on its allegation that the gasoline tanks were illegally installed. On September 2, 1982 Hemmeter and the City filed a motion for summary judgment against Waikiki Discount. At the September 13, 1982 hearing on Hemmeter's and the City's motion, Waikiki Discount made an oral request for a continuance pursuant to Rule 56(f), Hawaii Rules of Civil Procedure (HRCP).[5] The request for continuance was taken under advisement by the court. On October 25, 1982 the court issued a summary judgment in favor of Hemmeter and the City and against Waikiki Discount. It also issued an order 1) denying both Waikiki Discount's motion for partial summary judgment and its request for a continuance; and 2) declaring Waikiki Discount's second motion to compel discovery (filed August 19, 1982) to be moot. Motions to reconsider and to alter or amend judgment were denied. On May 13, 1983 the lower court issued an order directing entry of final judgment under Rule 54(b), HRCP, which made the October 25, 1982 summary judgment final. Waikiki Discount and Waikiki Residents Association filed a timely notice of appeal. Subsequently, Waikiki Residents Association withdrew as an appellant.

In its appeal, Waikiki Discount contends the lower court 1) abused its discretion and erred as a matter of law in denying Waikiki Discount's Rule 56(f), HRCP, motion to continue and 2) erred as a matter of law in granting Hemmeter's and the City's

---

[5] Rule 56(f), HRCP, provides in relevant part:

*When Affidavits are Unavailable.* Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

summary judgment motion. We do not reach these contentions, however, because Waikiki Discount lacked standing to bring this action in the lower court.[6]

---

[6] Substantively, Waikiki Discount's claims are without merit.

#### 1.
#### REQUEST TO CONTINUE HEARING

Waikiki Discount's claim that the lower court abused its discretion in denying its request to continue is based on Irving Melnick's (President, Waikiki Discount) absence from the state and the fact that Captain George Nakanishi of the Honolulu Fire Department was on vacation and could not be deposed. We are not convinced these facts constitute an abuse of discretion.

Waikiki Discount did not show that Melnick had knowledge of any material facts. His affidavit attached to Waikiki Discount's August 9, 1982 motion for partial summary judgment contains merely beliefs rather than facts. As to the unavailability of Captain Nakanishi, Waikiki Discount knew of his identity eight months earlier when he had signed answers to interrogatories, yet they failed to depose him earlier.

It is significant that Waikiki Discount's reason for requesting the continuance is basically to complete discovery; however, by the time of its request (September 13, 1982), this case was four years old (complaint filed September 11, 1978).

#### 2.
#### SUMMARY JUDGMENT IN FAVOR OF
#### HEMMETER AND THE CITY

Waikiki Discount contends that the lower court erred in granting summary judgment when its August 19, 1982 motion to compel discovery was pending. Under 56(b), HRCP, a defending party may move "at any time" for summary judgment. Consequently, the pending motion to compel did not bar the court from granting the summary judgment motion.

#### 2a.
#### Parking Stalls

Regarding the number of parking stalls in Hemmeter Center; it is clear that Hemmeter was required by ordinance to obtain building permits, that it did obtain the applicable permits, and that it did comply with the construction of the requisite number of stalls. (RIII, 694-98, 725-37; RIV, 50-74.) The City correctly determined the number of parking stalls required by the applicable provisions of the CZC. Under § 21-717(e), CZC, Hemmeter was required to have one parking stall for every four hotel rooms. Additional parking stalls were required for the eating and drinking establishments accessory to the hotel. Section 21-707(f) requires one space for each 300 square feet of floor area in the dining room. Under these provisions, Hemmeter Center was required to provide 467 stalls and it has 477 stalls.

On the question of continual availability of the stalls, the special permits (RIV, 346-47, 349-50) and secs. 21-278 and 21-279, CZC, apply only to the stalls in the off-site parking facility which are continually available. Moreover, in an opinion letter to H. Shima, director and building superintendent, corporation counsel notes that the CZC imposes requirements regarding only the number of parking stalls but is silent as to their use. (RIV, 368) Consequently, the use of stalls leased by Hertz and Budget does not violate any CZC provision.

## I.

Waikiki Discount contends that "since no Defendants-Appellees appealed from the lower court's denial of the Motion to Dismiss, . . . no Defendant should be allowed to argue against the standing [of Waikiki Discount]." We disagree.

The question of whether the plaintiff has standing to bring the action or to appeal its dismissal may be raised *sua sponte* by the court having jurisdiction over the case. *See Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. ___, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Brown v. Edwards*, 721 F.2d 1442 (1984); 13A Wright, Miller & Cooper, Federal Practice and Procedure: *Jurisdiction 2d* § 3531.15 (1984). The judiciary's ability to control its caseload by requiring plaintiffs and appellants to have standing does not depend on the ability and desire of defendants and appellees to notice and raise the issue.

## II.

Waikiki Discount argues that the question of its standing to bring this action and to appeal its dismissal should properly be decided by the trial court and, therefore, we should remand this case for additional proceedings. For the reasons stated above we disagree.

## III.

As best we can discern, the gravamen of Waikiki Discount's complaint is that 1) Waikiki Discount, as a private legal entity, has sustained injury because the applicable ordinances and regulations have not been enforced; and 2) the City's alleged failure to enforce various provisions of the CZC and the Fire Marshal's Rules and

---

2b.
Gas Tanks

The installation and use of the gas tanks were authorized and comply with the applicable fire regulations. (RIII, 725-37; RIV 50-74.) Sections 1.5(e) and 6.3, chap. 2 of the Fire Marshal Rules and Regulations apply to the dispensing of gas within buildings and below grade, and the gas tanks located in Hemmeter Center comply with these provisions.

Regulations allowed Hemmeter to enter into agreements with Waikiki Discount on which Hemmeter subsequently defaulted. Because Waikiki Discount alleges it sustained different injuries by different defendants, the question of Waikiki Discount's standing to bring suit against each of the two defendants will be discussed separately.

A.

### WAIKIKI DISCOUNT'S STANDING TO SUE THE CITY

Even though his injury does not differ from the public's generally, a member of the public has standing to sue to enforce the rights of the public if he can show that he has suffered an injury in fact. *Akau v. Olomana Corp.*, 65 Haw. 383, 652 P.2d 1130 (1982). According to *Akau*, injury in fact requires a plaintiff to show that 1) he has suffered actual or threatened injury as a result of the defendant's alleged illegal conduct; 2) the injury can be traced to the challenged action; and 3) the injury is likely to be remedied by a favorable decision. *Id.* at 389, 652 P.2d at 1134, 1135. In our view, Waikiki Discount has failed to make the requisite showing.

Waikiki Discount's pleadings fail to allege any injury in fact in its suit to enforce the applicable ordinances and rules. Nothing in the complaint indicates that Waikiki Discount was a lessee of space at the Hemmeter Center. Therefore, Waikiki Discount has not shown that it has suffered actual or threatened economic or other injury because of the City's alleged failure to enforce the applicable code sections and fire regulations. The granting of Waikiki Discount's requested declaratory or injunctive relief would not affect Waikiki Discount in any clear or palpable way.[7] Thus, Waikiki Discount was "merely airing a political or intellectual grievance." *Akau*, 65 Haw. at 390, 652 P.2d at 1135.

Moreover, no statute provides for enforcement of the CZC or Fire Marshal's Rules and Regulations by an individual; rather,

---

[7] Because we hold that Waikiki Discount has not shown that it suffered actual or threatened injury, we need not discuss the other elements of the injury in fact test.

authority for enforcement has been explicitly conferred on specific public officials.[8] *See Marsland v. Pang,* 5 Haw. App. 463, 701 P.2d 175 (1985).

B.

WAIKIKI DISCOUNT'S STANDING TO SUE HEMMETER

In addition to the City, Waikiki Discount also sued Hemmeter alleging that as a consequence of the nonenforcement of the Fire Marshal's Regulations and the CZC, Hemmeter breached agreements to lease space to Waikiki Discount. Like its complaint against the City, Waikiki Discount's complaint against Hemmeter must show that it has sustained an injury in fact. *Akau, supra.* Assuming the allegations of the complaint to be true, as we must on a motion to dismiss, *Midkiff v. Castle & Cooke, Inc.,* 45 Haw. 409, 368 P.2d 887 (1962); *Marsland v. Pang, supra;* 5 Wright & Miller, Federal Practice and Procedure: *Civil* § 1357 (1969), Waikiki Discount's injury by Hemmeter is the alleged default of the agreements to lease.

However, our inquiry does not end there. Waikiki Discount must also show that the injury complained of is likely to be redressed by the relief requested. *Id.* at 389. In our view, Waikiki Discount has failed to make this showing.

In its second amended complaint, Waikiki Discount requests that the court declare the gasoline tanks and the parking stalls at Hemmeter Center to be in violation of the applicable code sections, that the gasoline tanks be removed or brought up to the requisite

---

[8] The relevant portions of Hawaii Revised Statutes and the Comprehensive Zoning Code provide:

[HRS § 132-11] *Enforcement of fire regulations; hearings; orders; liens.* The fire marshal is vested with the power and jurisdiction over, and shall have such supervision of, every building·in the State as may be necessary to enforce all laws, ordinances, regulations, and orders requiring protection from fire loss.

[CZC Sec. 21-106] *Violations and Penalties.*
(a) The City may maintain an action for an injunction to restrain any violation of the provisions of this Chapter and may taken any other lawful action to prevent or remedy any violation.

safety standards, and that additional parking stalls be made available to the general public by Hemmeter Center. Assuming that Waikiki Discount prevailed and a court ordered both the declaratory and injunctive relief sought, it does not follow that Hemmeter would thereby be compelled to enter into leases with Waikiki Discount for space in Hemmeter Center or that Waikiki Discount's alleged contractual injury would otherwise be remedied. The pleading reveals no logical connection between the enforcement or lack of enforcement of applicable laws and regulations and the agreements to lease space on which Hemmeter allegedly defaulted.

## IV.

Accordingly, this appeal is dismissed for lack of plaintiff's standing to bring this case in the lower court or to appeal an adverse summary judgment.

*Waikiki Discount Bazaar, Inc.* and *Island Fashions, Inc.*, appellants: *Jack F. Schweigert (John Ashford Thompson* with him on the reply brief; *Schweigert & Associates)* on the opening and reply briefs; *Randolph R. Slaton (Williams & Slaton)* on the supplemental brief.

*Winston K. Q. Wong,* Deputy Corporation Counsel, on the briefs for appellees City.

*Wallace S. Fujiyama, Rodney M. Fujiyama, Paul H. Sato, Robin R. Horner,* and *Kerry M. Komatsubara (Fujiyama, Duffy & Fujiyama)* on the briefs for appellee Hemmeter.