CAPTAIN ANDY'S SAILING, INC., a Hawai`i corporation, Plaintiff-Appellant,
v.
DEPARTMENT OF LAND AND NATURAL RESOURCES, STATE OF HAWAI`I; LAURA H. THIELEN, Director of the Department of Land and Natural Resources and Chairperson of the Board of Land and Natural Resources, State of Hawai`i; ED UNDERWOOD, Administrator, Division of Boating and Ocean Recreation, Department of Land and
Natural Resources, State of Hawai`i; and JOSEPH BORDEN, Kauai District Manager, Division of Boating and Ocean Recreation, Department of Land and Natural Resources, State of Hawai`i, Defendants-Appellees, and
TERRY DONNELLY AND BLUE DOLPHIN CHARTERS, LTD., Intervenor Defendants-Appellees.
No. 27355.
Supreme Court of Hawaii.
November 25, 2008.

SUMMARY DISPOSITION ORDER

NOT FOR PUBLICATION
MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.
Plaintiff-Appellant Captain Andy's Sailing, Inc., ("CASI") appeals from the first circuit court's[1] ("circuit court") May 18, 2005 final judgment in favor of defendant-appellee Department of Land and Natural Resources, State of Hawai`i ("DLNR") and intervenors-appellees Blue Dolphin Charters, Ltd. ("BDC") and Terry Donnelly ("Donnelly") (collectively referred to as "Intervenors") and against CASI. Final judgment was entered pursuant to the circuit court's April 6, 2005 "Findings of Fact and Conclusions of Law," which concluded that: (1) CASI lacks standing to claim declaratory relief from BDC operating at Kukuiula Small Boat Harbor without a commercial permit; (2) BDC is entitled to a commercial permit at Kukuiula Small Boat Harbor subject to applicable law and regulations; and (3) "vessels that have both a commercial and a regular mooring permit for use of a [DLNR] small boat harbor [must] pay a [two percent] commercial fee," from all the revenue they earn. The final judgment also granted DLNR's motion for costs against CASI under HRCP Rule 54(d)[2] and Hawai`i Revised Statutes ("HRS") § 607-9.[3]
On appeal, CASI argues[4] the circuit court erred by ruling in favor of Intervenors' commercial permit, inasmuch as (1) CASI, a competitor of BDC, has standing to challenge BDC's Kukuiula Small Boat Harbor commercial permit because "it can be reasonably inferred that CASI's business opportunities suffered a corresponding reduction"; (2) the circuit court lacked jurisdiction to rule that Intervenors had a right to the Kukuiula Small Boat Harbor commercial permit; and (3) Intervenors' commercial permit for Kukuiula Small Boat Harbor is not permitted under Hawai`i Administrative Rules for small boat harbors ("HAR") § 13-231-58 (1994). CASI further argues that (1) interpreting HAR § 13-234-25 (1994) as requiring a permittee to pay two percent of its gross receipts "exceeds [DLNR's] authority under [HRS §] 200-10, is inconsistent with the policies underlying that provision and works a result that is at once absurd and unjust," and (2) CASI's claim to a refund of the use fees for Kukuiula Small Boat Harbor is not exclusively governed by HRS § 40-35. Finally, CASI asserts that, based on the equities of the case, the circuit court abused its discretion by awarding DLNR, the prevailing party, $4,037.83 in costs.
Upon carefully reviewing the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we hold that:
(1) the circuit court properly concluded that CASI lacked standing[5] to participate in Intervenors' declaratory action seeking a judgment that they are entitled to a Kukuiula Harbor commercial permit. CASI's claim of standing to challenge Intervenors' permit is "abstract, conjectural, or merely hypothetical," and CASI has not shown an injury-in-fact.[6] See Mottl v. Miyahira, 95 Hawai`i 381, 392, 23 P.3d 716, 724, 727 (2001) (concluding that allegations that an act "must" negatively affect the plaintiffs are mere speculation and not a "distinct and palpable injury" as an injury-in-fact requires);
(2) the circuit court properly concluded that CASI lacked standing to seek an injunction as to Intervenors' operation at Kukuiula Harbor without a commercial permit and without paying the two percent use fee, inasmuch as CASI did not establish that it was injured by DLNR's application of Hawai`i Administrative Rules towards Intervenors or by Intervenors' mooring at Kukuiula Harbor without a commercial permit. See Mottl, 95 Hawai`i at 392, 395, 23 P.3d at 727, 730;
(3) HAR § 13-234-25 unambiguously requires the operator of a vessel to pay a fee based on gross revenues from the operation of the vessel and not based on only the revenue from commercial activities at a DOBOR harbor.[7] Requiring a vessel owner to pay both DLNR and non-DOBOR fees for operating from the non-DOBOR pier, such as Port Allen is also not absurd or unjust,[8] inasmuch as it is reasonable that an operator of a vessel with a Kukuiula Harbor commercial permit, pay[9] for the right to "load or discharge passengers or cargo or engage in any other commercial activity" at Kukuiula Harbor proportional to gross revenues that are collected from all of its operations, including non-DLNR operations. HAR § 13-234-25 was also consistent with the DLNR's statutory power under HRS § 200-10 (1993),[10] because it plainly provides that an operator of a vessel used for commercial purposes from its permitted mooring shall pay "a fee based on a percentage of the gross revenues derived from the use of the vessel. . . .";
(4) the circuit court did not abuse its discretion by awarding DLNR costs under HRCP Rule 54(d) and HRS § 607-9.[11] See Pulawa v. GTE Hawaiian Tel, 112 Hawai`i 3, 23, 143 P.3d 1205, 1225 (2006) ("The presumption [that the prevailing party is entitled to costs] itself provides all the reason a court needs for awarding costs, and when a district court states no reason for awarding costs, we will assume it acted based on that presumption." (quoting Save Our Valley v. Sound Transit, 335 F.3d 932, 945 (9th Cir. 2003)). Therefore,
IT IS HEREBY ORDERED that the first circuit court's May 18, 2005 judgment in favor of DLNR, BDC, and Donnelly, and against CASI is affirmed in all respects.
On the briefs:
Dennis Niles and William M. McKeon of Paul Johnson Park & Niles, for plaintiff-appellant.
Captain Andy's Sailing, Inc. William J. Wynhoff, Deputy Attorney General, Department of the Attorney General, State of Hawai`i, for defendant-appellee.
Department of Land and Natural Resources, State of Hawai`i Robert F. Miller, for intervenors-appellees, Blue Dolphin Charters, Ltd. and Terry Donnelly.
NOTES
[1] The Honorable Victoria S. Marks presided.
[2] HRCP Rule 54(d) provides, "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." (Emphasis added.) The language of this rule

creates a strong presumption that the prevailing party will recover costs . . . . The presumption that the prevailing party is entitled to costs must be overcome by some showing that an award would be inequitable under the circumstances. The losing party bears the burden of making this showing.
Pulawa v. GTE Hawaiian Tel, 112 Hawai`i 3, 19, 143 P.3d 1205, 1221 (2006) (quoting Wong v. Takeuchi, 88 Hawai`i 46, 52, 961 P.2d 611, 617 (1998)).
[3] HRS § 607-9 specifies that

[a]ll actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.
(Emphases added.)
[4] CASI enumerates six findings of fact in its points of error section that do not have a corresponding "argument" section.

Therefore, each of these points is deemed waived. See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").
[5] To establish standing, a plaintiff must satisfy the following elements of the traditional injury-in-fact test: "(1) has the plaintiff suffered an actual or threatened injury; (2) is the injury fairly traceable to the defendant's actions; and (3) would a favorable decision likely provide relief for plaintiff's injury." Sierra Club v. Dep't of Transp., 115 Hawai`i 299, 319, 167 P.3d 292, 312 (2007) (footnote and ellipses in original omitted). In addition, there are "less stringent requirements for access and participation in the court process" when establishing standing in an action for declaratory relief. Mottl v. Miyahira, 95 Hawai`i 381, 389, 23 P.3d 716, 724 (2001). "Although HRS § 632-1, [which grants a circuit court jurisdiction for declaratory relief)] provides for standing to sue "[i]n cases of actual controversy,"

[the] purpose [of HRS chapter 632] is to afford relief . . . without requiring one of the parties interested so to invade the rights asserted by the other as to entitle the party to maintain an ordinary action therefor. It is to be liberally interpreted and administered, with a view to making the courts more serviceable to the people.
Citizens for Protection of N. Kohala Coastline v. County of Hawai`i ("Citizens"), 91 Hawai`i 94, 100, 979 P.2d 1120, 1126 (1999) (quoting Richard v. Metcalf, 82 Hawai`i 249, 254 n.12, 921 P.2d 169, 174 n.12 (1996)); County of Kauai ex rel. Nakazawa v. Baptiste, 115 Hawai`i 15, 32 n.18, 165 P.3d 916, 933 n.18 (2007); but see Mottl, 95 Hawai`i at 395, 23 P.3d at 730 (cautioning that "[Citizens] does not abrogate the `injury in fact' standing requirement in actions for declaratory relief affecting a public interest, but merely mandates less demanding standards in assessing the plaintiffs' proof of an `injury in fact'").
[6] It is well established that injury-in-fact includes harm to economic interests. See Akau v. Olohana Corp., 65 Haw. 383, 389, 652 P.2d 1130, 1135 (1982) ("Injury in fact has always included harm to economic interests." (citations omitted)). A competitor, however, does not have standing where the state has not directly injured the competitor. See Keahole Defense Coalition, Inc. v. Bd. of Land and Natural Res. ("Keahole"), 110 Hawai'i 419, 434-35, 134 P.3d 585, 600-01 (2006) (holding that a plaintiff does not have standing to challenge the Board of Land and Natural Resources' decision to grant a competitor energy producer's a time extension to develop its energy station at Keahole, inasmuch as the plaintiff did not indicate that it would hurt its development); but cf. Bush v. Hawaiian Homes Comm'n, 81 Hawai'i 474, 479, 918 P.2d 1130, 1135 (1996) (declaring that "standing barriers should be lowered in cases of public interest under our jurisdiction" and determining that the appellants, Native Hawaiian beneficiaries of a trust, have standing to challenge the defendant's agreements that may enable farming competition against appellants).
[7] Because HAR § 13-234-25 is plain and unambiguous, it is not necessary or appropriate to consider the intent of this rule. State v. Haugen, 104 Hawai`i 71, 75, 85 P.3d 178, 182 (2004) ("[I]t is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning." (Citations and quotation signals omitted.)); see also State v. Kupihea, 98 Hawai`i 196, 206, 46 P.3d 498, 508 (2002) ("'[W]e do not resort to legislative history to cloud a statutory text that is clear.'" (Quoting State v. Kalama, 94 Hawai`i 60, 64, 8 P.3d 1224, 1228 (2000).)).
[8] Despite the unambiguous language of the statute, we are "willing to look beyond the plain, obvious, and unambiguous language of a statute, the facial constitutionality of which is not at issue, for the purpose of ascertaining its underlying legislative intent, but only if a literal construction `would produce an absurd and unjust result.'" Haugen, 104 Hawai`i at 77, 85 P.3d at 184 (quoting State v. Dudoit, 90 Hawai`i 262, 270, 978 P.2d 700, 708 (1999)).
[9] The fees are:

(1) Calculated to produce an amount at least sufficient to pay the expenses of operating, maintaining, and managing the facilities and services and cost including interest, of amortizing capital improvements for boating facilities appropriated after July 1, 1975, including, but not limited to, berths, slips, and related accommodations, exclusive of the costs of constructing, operating, and maintaining general navigation channels, protective structures, and aids to navigation.
(2) Fixed with due regard to the primary purposes of providing public recreational facilities and promoting the fishing industry.
HAR § 13-234-1 (1994). Cf. Captain Andy's Sailing, Inc. v. Johns, 195 F.Supp.2d 1157, 1161-63 (D. Haw. 2001) (recognizing that the use fee "bear[s] a rational relationship to the regulation of DLNR facilities")
[10] HRS § 200-10(c)(4) provided in pertinent part:

The permittee shall pay moorage fees to the department for the use permit which shall be based on, but not limited to, the use of the vessel, its effect on the harbor, use of facilities, and the cost of administering this mooring program; and, furthermore:
. . . .
. . . . If a vessel is used for commercial purposes from its permitted mooring, the permittee shall pay, in lieu of the moorage and liveaboard fee, a fee based on a percentage of the gross revenues derived from the use of the vessel which shall be not less than two times the moorage fee assessed for a recreational vessel of the same size.
[11] See Pacheco v. Mineto, 448 P.3d 783, 795 (5th Cir. 2006) (holding that all federal litigants have a duty to bring a case in good faith, and therefore, "noble intentions alone do not relieve an unsuccessful litigant of the obligation under Rule 54(d) to compensate his opponent for reasonable costs. `If the awarding of costs could be thwarted every time the unsuccessful party is a normal, average party and not a knave, [FRCP Rule] 54(d)(1) would have little substance remaining.'") (quoting Nat'l Info. Servs. Inc. v. TRW, Inc., 51 F.3d 1470, 1472-73 (9th Cir. 1995), overruled on other grounds by Ass'n of Mexican-American Educators v. State, 231 F.3d 572, 593 (9th Cir. 2000)).