134 P.3d 585

**KEAHOLE DEFENSE COALITION, INC., a Hawai'i nonprofit corporation; Peggy J. Ratliff and Mahi Cooper, Appellants–Appellees**

v.

**BOARD OF LAND AND NATURAL RESOURCES, State of Hawai'i; Department of Land and Natural Resources, State of Hawai'i; Hawaii Electric Light Company, Inc., a Hawai'i corporation, Department of Hawaiian Home Lands, State of Hawai'i, Appellees–Appellees**

and

**Waimana Enterprises, Inc., a Hawai'i corporation, Appellee–Appellant (Civ. No. 02–1–0068K)**

**Department of Hawaiian Home Lands, State of Hawai'i, Appellant–Appellee**

v.

**Department of Land and Natural Resources, State of Hawai'i; Board of Land and Natural Resources, State of Hawai'i; Hawaii Electric Light Company, Inc., a Hawai'i corporation, Peggy J. Ratliff, Mahi Cooper, Keahole Defense Coalition, Inc., a Hawai'i nonprofit corporation, Appellees–Appellees**

and

**Waimana Enterprises, Inc., a Hawai'i corporation, Appellee–Appellant (Civ. No. 02–1–0079K).**

**No. 26305.**

Supreme Court of Hawai'i.

May 18, 2006.

As Amended May 26, 2006.

See also, 102 Hawai'i 257, 75 P.3d 160.

Michele–Lynn E. Luke and Deborah S. Jackson (Richards & Luke), Honolulu, on the briefs, for Appellee–Appellant Waimana Enterprises, Inc.

Michael J. Matsukawa, on the briefs, for Appellants–Appellees Keahole Defense Coalition, Inc., Peggy J. Ratliff, and Mahi Cooper.

A. Sonia Faust and Linda L.W. Chow, Deputy Attorneys General, on the briefs, for Appellees–Appellees Department of Land and Natural Resources, State of Hawai‘i, and Board of Land and Natural Resources, State of Hawai‘i.

Warren Price III and Robert A. Marks (Price Okamoto Himeno & Lum) and John T. Komeiji and Brian A. Kang (Watanabe Ing Kawashima & Komeiji), Honolulu, on the briefs, for Appellee–Appellee Hawaii Electric Light Company, Inc.

Wayne Nasser, Kevin W. Herring and Mi Yung C. Park (Ashford & Wriston), Honolulu, on the briefs, for Appellant–Appellee Department of Hawaiian Home Lands, State of Hawai‘i.

MOON, C.J., LEVINSON, ACOBA, JJ., Circuit Judge DEL ROSARIO for NAKAYAMA, J., recused, and Circuit Judge CHAN for DUFFY, J., recused; with Circuit Judge DEL ROSARIO concurring separately and with whom ACOBA, J., joins.

Opinion of the Court by ACOBA, J.

We hold that Appellee–Appellant Waimana Enterprises, Inc. (Waimana) lacked standing to challenge the decision of Appellee–Appellee Board of Land and Natural Resources (BLNR) regarding a time extension that it granted to Appellee–Appellee Hawaii Electric Light Company, Inc. (HELCO) to complete construction of HELCO's Keāhole power station inasmuch as Waimana was barred by collateral estoppel and does not have a sufficient property interest to have suffered a due process violation under the Fourteenth Amendment to the United States Constitution[1] or article I, section 5 of the Hawai‘i Constitution,[2] and, thus, the circuit court of the third circuit (the court),[3] did not abuse its discretion in vacating its November 7, 2002 final judgment reversing the decision of the BLNR. For the foregoing reasons, the court's November 28, 2003 first amended final judgment, vacating the October 3, 2002 order reversing the decision of the BLNR and November 7, 2002 final judgment, is affirmed.

## I.

This appeal arises from a dispute, spanning more than a decade, over plans by HELCO to expand the Keāhole Generating Station on the Island of Hawai‘i.[4] *See Hawaii Elec. Light Co. v. Dep't of Land & Natural Res.*, 102 Hawai‘i 257, 75 P.3d 160 (2003) [hereinafter, *HELCO* ]. On August 26, 1992, HELCO filed a conservation district use application (CDUA) with BLNR. The CDUA was designated as CDUA HA–487A. Following a hearing on CDUA HA–487A, Waimana, Appellee–Appellee Department of Land and Natural Resources (DLNR), and Appellants–Appellees Mahi Cooper (Cooper) and Peggy Ratliff (Ratliff) requested contested case hearings. *See id.* at 262, 75 P.3d at 165. On May 13, 1994, while the requests for contested case hearings were pending,[5]

---

1. The Fourteenth Amendment to the United States Constitution states in part that:

    No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law.

2. Article I, section 5 of the Hawai‘i Constitution, entitled "Due Process and Equal Protection," provides that:

    No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

3. The Honorable Ronald Ibarra presided.

4. The Keāhole Generating Station has operated as a "peaking," or part-time, generating station.

5. The hearing officer assigned to preside over the contested case had fallen ill and the chairperson

BLNR voted on a DLNR staff member's recommendation to deny CDUA HA–487A without prejudice. *Id.* BLNR apparently took the vote without holding a contested case hearing in order to meet the May 18, 1994 deadline for acting upon the CDUA.[6] *See id.* The vote was two in favor of denial, three against, and one recusal. *Id.* On the vote to grant the application, no one voted in favor, two voted against, with one recusal and three not voting. *Id.* On May 17, 1994, Waimana appealed to the court. This appeal was docketed as Civ. No. 94–123K. On May 29, 1994, the court granted Waimana's motion for stay of agency action, staying any legal effect of the May 13, 1994 "non-action" of BLNR regarding approval/disapproval of CDUA HA–487A, including any claim that the CDUA was automatically granted.

On November 9, 1994, the court issued an order invalidating BLNR's votes[7] and remanding CDUA HA–487A back to BLNR (the 1994 remand order). In the 1994 remand order, the court concluded that "[i]n this instance, in the absence of a relevant statute or rule, the BLNR is 'required by law' to hold a contested case hearing upon these third party requests provided that Waimana, Cooper, and Ratliff have constitutionally protected interests which entitle them to a contested case hearing by constitutional due process[.]" The court then determined that "[b]y failing to provide Cooper and Ratliff with a contested case hearing, the BLNR denied these parties their constitutional right to due process, and, consequently, they were prejudiced." But as to Waimana, the court rendered the following conclusions of law:

(5) Although Waimana argues it is a native Hawaiian-controlled entity whose economic interests, environmental interests and interests in ceded lands are at stake and that, therefore, it has constitutionally protected property interests, ... the court concludes otherwise; as an entity neither physically located near the site of HELCO's proposed expansion nor whose purpose is to protect environmental or Hawaiian interests, *Waimana's interest in contesting the CDUA appears to be purely economic,* an interest which the DLNR recognized in recommending Waimana's intervention in the CDUA process:

> [Waimana] is an energy company. It has conducted studies and obtained a lease for development of a generator station at an alternative site, Kawaihae, that may be superior to the Keahole site. Expansion of the Keahole generating station may suppress development of [Waimana's] project.

(6) *Waimana does not have a due process right to a contested case hearing because its economic interest does not constitute "property" within the meaning of the due process clauses of the federal and state constitutions;* ...;

(7) Therefore, the fact that the BLNR admitted Waimana as a party to the case and granted it a contested case hearing did not constitute a determination that [Waimana] had a property interest protectable under the Fourteenth amendment;

(8) *Not having a right to a contested case hearing by statute, rule or by the constitution, Waimana lacks standing to file this*

---

of Appellee–Appellee Board of Land and Natural Resources (BLNR) postponed the contested case indefinitely.

**6.** Pursuant to Hawai'i Revised Statutes § 183–41 (1993), BLNR had 180 days to rule on the conservation district use application (CDUA) or, by default, Appellee–Appellee Hawaii Electric Light Company, Inc. (HELCO) could put the land to the use requested. *See infra* note 8. *See also Hawaii Electric Light Co. v. Dep't of Land & Natural Res.,* 102 Hawai'i 257, 262, 75 P.3d 160, 165 (2003) [hereinafter *Helco*] (explaining that "efforts to meet the statutory deadline were frustrated by incidental problems").

**7.** As this court related in *HELCO,*

> [o]n November 9, 1994, the court invalidated the votes of the Board and held that: 1) because the Board failed to garner four votes to either approve or to reject HELCO's application, the Board took no "action" on the application; and 2) it would be a denial of procedural due process to allow HELCO to automatically expand the Keahole generating station while there were requests for contested cases still pending that the Board had not acted upon. The court then remanded the case and ordered the Board to hold a contested case hearing within 49 days, or as extended by the Board.

*Appeal pursuant to [Hawai'i Revised Statutes (HRS) ] Section 91–14(a)[.]*

(Emphases added.) The court further concluded that

> [a]lthough Cooper and Ratliff are designated as Appellees in this Appeal, their interests are aligned with Appellant Waimana in contesting the agency's actions ... [and, thus, i]n order to avoid dismissal of Cooper's and Mahi's interests due to [Waimana's] dismissal from this action, the Court confers standing on Cooper and Ratliff as "*de facto* Appellants," considering that they are pro se parties and that there would appear to be little or no prejudice to the other parties by granting them such status[.]

Waimana did not appeal the 1994 remand order; it did not challenge the court's determination that it lacked standing. On remand to BLNR, however, Waimana was made a party to the contested case by stipulation among all of the parties. *HELCO*, 102 Hawai'i at 262, 75 P.3d at 165. The 1994 remand order was incorporated in a December 5, 1997 final judgment, which stated as follows:

> Judgment is entered in favor of Appellant Waimana Enterprises, Inc. and Appellees Peggy Ratliff and Mahi Cooper and against Appellees Department of Land and Natural Resources, Board of Land and Natural Resources and Hawaii Electric Company, Inc., remanding the Conservation District Use Application HA–487A to the Board of Land and Natural Resources for further hearing consistent with the [c]ourt's November 9, 1994 Order.
>
> Judgment is entered nunc pro tunc to November 9, 1994 and is limited to the disposition of issues before the [c]ourt as of November 9, 1994.

102 Hawai'i at 263, 75 P.3d at 166.

8. On July 8, 2003, this court affirmed the court's determination that HELCO could put the land to the use requested in the CDUA because BLNR failed to take "action" within the statutorily required time period. *HELCO*, 102 Hawai'i at 261, 75 P.3d at 164. This court held that "[i]nsofar as a majority of the Board did not affirmatively approve or disapprove of HELCO's application within the time established, ... the Board

Following the contested case hearing that was held over a five-day period in November 1995, the hearing officer recommended that the CDUA be denied. *Id.* BLNR denied CDUA HA–487A based on a three-to-two vote. *Id.* at 264, 75 P.3d at 167. On May 17, 1996, HELCO appealed to the court. *Id.* On May 22, 1996, Cooper, Ratliff, and Waimana filed separate notices of appeal. *Id.* "On January 2, 1997, the court ruled that the failure to deny the application by four votes constituted non-action on the part of the Board and, by operation of HRS § 183–41, HELCO could put the Keahole conservation land to use as requested in the application[.]" [8] *Id.*

## II.

In tandem with litigation over what then became CDUP (conservation district use permit) HA–487A, Appellant–Appellee Keahole Defense Coalition (KDC) maintained a separate action, filed in the court on February 5, 1997, against the Department of Health (DOH), BLNR, and HELCO. This action, docketed as Civ. No. 97–00017K, sought to compel enforcement of various environmental regulations on HELCO's expansion project.

## III.

HELCO's construction deadline under CDUP HA–487A expired on April 26, 1999. On March 25, 2002, following an evidentiary hearing in which HELCO, Appellee–Appellee Department of Hawaiian Home Lands (DHHL), Cooper, Ratliff, KDC, and Waimana participated,[9] BLNR granted HELCO a time extension to complete construction of improvements at the Keāhole power station. The new deadline under the CDUP was December 31, 2003. On April 8, 2002, KDC, Cooper, and Ratliff filed a notice of appeal to the court, challenging BLNR's grant of this

failed to render a 'decision' so as to avoid the 180–day default mechanism of HRS § 183–41" which "allows the applicant to implement the use requested in the application if the department 'fails to give notice, hold a hearing, and render a decision." *Id.* at 269, 75 P.3d at 172 (brackets and emphasis omitted).

9. According to HELCO, the contested case hearing for the extension request was docketed as "DLNR Contested Case Hearing No. 01–03–HA."

time extension. This appeal was docketed as Civ. No. 02–1–0068K. Waimana did not appeal BLNR's decision. Waimana was named as an appellee, apparently because it participated in the hearing before BLNR.

On October 3, 2002, the court reversed BLNR's decision, finding that BLNR exceeded its statutory authority in granting the extension. On November 1, 2002, HELCO filed its notice of appeal to this court, challenging the court's October 3, 2002 order. This secondary appeal was docketed as S.Ct. No. 25446. Final judgment by the court relating to the October 3, 2002 order was entered on November 7, 2002.

While HELCO's appeal in S.Ct. No. 25446 concerning the time extension was pending before this court, the court granted HELCO's motion to compel alternative dispute resolution in Civ. No. 97–00017K. On May 15, 2003, the court ordered KDC, HELCO, DOH, BLNR, and DLNR "to mediate the legal disputes involving the expansion of the Keahole power plant." [10] Although Waimana was not a party to Civ. No. 97–00017K, counsel for HELCO contacted counsel for Waimana by letter dated April 26, 2003, to determine Waimana's position in light of the order to mediate. On April 28, 2003, counsel for HELCO also wrote to Albert S.N. Hee (Hee), President of Waimana, to document the particulars of a conversation. That letter stated that Hee "expressed great doubt that HELCO would be successful in negotiations with DHHL as long as HELCO's objective remained to finish construction at Keahole"

and that "Hee indicated [he] view[ed] these settlement efforts as a waste of time." Counsel for HELCO informed Waimana by letter that HELCO would continue negotiating with the other parties and would keep Waimana's "perspective in mind." Waimana did not respond.

KDC, Cooper, Ratliff, HELCO, DOH, BLNR, DLNR, and DHHL [11] began several months of settlement discussions with the assistance of a court appointed mediator. They eventually reached a "settlement in principle" in Civil No. 97–00017K. Waimana did not participate in the settlement negotiations. As part of the settlement, the parties agreed to a *vacatur* of the court's November 7, 2002 final judgment reversing BLNR's decision to extend the construction deadline to December 31, 2003 in Civil No. 02–1–0068K, which was on appeal as S.Ct. No. 25446. On September 17, 2003, the mediator notified Waimana of an upcoming status conference in Civil No. 02–1–0068K. On September 19, 2003, the court held a status conference with all parties, including Waimana, and on September 29, 2003, the court expressed its "inclination" to vacate the November 7, 2002 judgment reversing BLNR's decision to grant the time extension under CDUP HA–487A in Civil No. 02–1–0068K, which was on appeal as S.Ct. No. 25446. In light of the court's "inclination," on October 14, 2003, this court remanded the appeal in S.Ct. No. 25446 to allow the court to consider the motion to vacate its November 7, 2002 judgment.[12]

---

**10.** Prior to the order compelling mediation, the Center for Alternative Dispute Resolution contacted Appellee–Appellant Waimana Enterprises, Inc. (Waimana) to facilitate mediation regarding the *HELCO* appeal, S.Ct. No. 21369 (consolidating S.Ct. Nos. 21263 and 21422 under S.Ct. No. 21369). By letter dated February 28, 2003, Albert S.N. Hee, President of Waimana, informed the Center for Alternative Dispute Resolution as follows:

Waimana welcomes and is willing to participate in any and all efforts to resolve the disputes now before the Supreme Court provided any effort has a reasonable chance to succeed. *The mediation which you proposed does not have a reasonable opportunity to succeed. This is due to the unstructured manner in which "you encourage" the parties to meet privately without a mediator. If the parties could reach*

*agreement among ourselves, we would not be in the Supreme Court today.*
Waimana continues to be willing to participate provided we are convinced that it is not a further waste of our resources. Waimana firmly believes there is a solution available outside of the judicial system. However, Waimana does not believe it is possible to find that solution if one of the parties drives the process. (Emphasis added.)

**11.** Appellee–Appellee Department of Hawaiian Home Lands (DHHL) participated in the mediation although it was not a party to Civ. No. 97–00017K.

**12.** This court's October 14, 2003 order recognized that
*(2) during the pendency of this appeal [ (S.Ct. No. 25446) ], the circuit court, in a separate*

Upon remand, on October 17, 2003, KDC, Ratliff, Cooper, and DHHL moved to vacate the October 3, 2002 order and November 7, 2002 judgment pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b). HELCO, BLNR, and DLNR filed joinders to this motion. Waimana filed a memorandum in opposition. On November 12, 2003, the court vacated its October 3, 2002 order and November 7, 2002 final judgment (2003 *vacatur* order). In the 2003 *vacatur* order, the court rendered the following relevant findings of fact (findings) and conclusions of law (conclusions):

### FINDINGS OF FACT

1. ... *Although the [c]ourt's mediation orders were entered in Civ. No. 97–017K, the parties to that proceeding are substantially the same as the parties in related proceedings involving the Keahole expansion project.*

. . . .

4. While the settlement will resolve KDC and DHHL's concerns with respect to the Keahole expansion project, *of greater significance is the fact that the benefits of the settlement, if effectuated, will also accrue in the public interest as a whole.* The effect of the settlement is to secure, by agreement, greater protections for the public interest than could be expected to be imposed solely by the Land Use Commission through its consideration of a petition to "rezone" the land at issue from Conservation to Urban.

5. The additional significant protections provided by the settlement will mitigate against the impact of the project in

terms of air and noise pollution, potable water, and aesthetic concerns. In addition, HELCO has agreed to provide DHHL with fresh water, and to assist DHHL in a solar water-heating program for its housing project in the area. HELCO has further agreed to support KDC's request to participate in the Public Utilities Commission rate base docket. *All of these terms provide significant and tangible benefits for the public.*

6. Pursuant to the settlement, HELCO has agreed to petition the Land Use Commission, State of Hawaii, to amend the existing land use district boundary for the land on which the Keahole project sits from the Conservation District to the Urban district. In addition, HELCO has agreed to petition the County of Hawaii to change the General Plan designation and county zoning district from its current designation and district to a designation and district appropriate for industrial activity. *These processes will allow all interested parties additional opportunities to provide input on the Keahole expansion project.*

7. *The parties have also agreed [that] the parties to the settlement will comply with all federal, state, and county laws and regulations.*

8. *Waimana ... is a Hawaii corporation whose primary purpose is to engage in the generation of electricity. [Waimana] is neither physically located near the site of HELCO's proposed expansion nor whose purpose is to protect environmental or Hawaiian interests. [Waimana's] interest in the Keahole ex-*

---

related case, ordered the parties to mediate the legal disputes involving the HELCO project; (3) although the mediation was ordered only in Civil No. 97–0001[7]K, the parties in that proceeding are involved in the instant appeal; (4) as a result of the mediation, the parties have reached a tentative agreement of all issues; (5) part of the agreement involves the vacation of the circuit court order and judgment at issue in this appeal; and (6) the circuit court indicated its inclination to grant a [Hawai'i Rules of Civil Procedure (HRCP)] Rule 60(b) motion if this court remands the matter to the circuit court. Therefore,

IT IS HEREBY ORDERED that:

1. Pursuant to *Life of the Land v. Ariyoshi,* 57 Haw. 249, 553 P.2d 464 (1976), the motion for remand and stay of briefing is granted....

2. *Within sixty days from the date of this order, the circuit court shall enter its order on the HRCP Rule 60(b) motion to vacate the order and judgment at issue in this appeal.*

. . . .

4. *Thereafter, Appellant [(HELCO)] shall take the necessary steps to dismiss this appeal.* If the circuit court does not enter the order granting the HRCP Rule 60(b) motion within the time provided, [HELCO] shall file its reply brief on January 9, 2004.

(Emphases added.)

*pansion is purely economic, as it has conducted studies and obtained a lease for development of a generator station at an alternative site, Kawaihae, that may be superior to the Keahole site. Expansion of the Keahole site may suppress development of [Waimana's] site.*

## CONCLUSIONS OF LAW

....

2. *This [c]ourt concluded that [Waimana] lacks standing in its Order Remanding HELCO's CDUA back to [BLNR], Civ. No. 94–059K. This [c]ourt held that [Waimana] does not have a due process right to a contested case hearing because its economic interests do not constitute "property" within the meaning of the due process clauses of the federal and state constitutions. [Waimana] has never appealed that holding; therefore the holding still stands on the issue of whether [Waimana] has standing to participate in this proceeding. This [c]ourt concludes, that, as a matter of law, it does not.*

3. Even assuming *arguendo,* that [Waimana] has standing, it has not suffered any constitutional prejudice, as its due process rights have not been denied. *[Waimana] had a full and fair opportunity to participate in the mediation with all of the parties, but repeatedly declined. The settlement agreement is not binding on [Waimana], and [Waimana] has every opportunity to pursue legal remedies, if any, in the courts.*

4. HRCP Rule 60(b) provides that:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: .... (5) ... It is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of judgment.

5. *This [c]ourt does not vacate its Orders lightly. A court may vacate a judgment "whenever that action is appropriate to accomplish justice." In Re Hana Ranch Co.,* 3 Haw.App. 141, 642 P.2d 938 (1982).

6. Rule 60(b) "may be utilized to seek the vacation of a judgment on the ground that the case has been settled so that it would not be equitable to have it remain in effect ..." *Wright, Miller & Kane, Federal Practice and Procedure; Civil 2d § 2863.*

7. This [c]ourt finds that the parties to this agency appeal, pursuant to this [c]ourt's order compelling mediation in the main enforcement action, Civ. No. 97–017K, have worked diligently to resolve their differences regarding the Keahole expansion project, and the agency appellants have rescinded their objections to the completion of the project. As such, there is no present case or controversy, the issues in this agency appeal are now moot, and *it is no longer equitable that the reversal order and final judgment have prospective application.*

8. *In addition, the [c]ourt finds that vacating the [c]ourt's previous Order is in the public interest, as the parties have agreed to enhanced air quality protection, reduced noise mitigation,*[13] *and reduced visual impact, as well as water and solar energy benefits for DHHL, that would not otherwise have been achieved.*

(Emphases added.) On November 28, 2003, the court entered its first amended final judgment in favor of HELCO, BLNR, DLNR, KDC, Ratliff, Cooper, and DHHL, and against Waimana. Waimana filed its notice of appeal from the first amended final judgment on December 26, 2003. On January 13, 2004, this court granted HELCO's motion to dismiss its appeal in S.Ct. No. 25446.

13. Although the court stated the settlement will result in "reduced noise mitigation," finding of fact (finding) 5 states in relevant part that "[t]he additional significant protections provided by the settlement will mitigate against the impact of the project in terms of air and noise pollution." This finding makes clear that the settlement will reduce noise pollution, not reduce efforts to mitigate noise pollution.

## IV.

In this appeal, S.Ct. No. 26305, Waimana challenges the court's November 12, 2003 *vacatur* of the November 7, 2002 final judgment as well as what it refers to as the court's *"sua sponte"* determination that Waimana "lacked standing to oppose the basis for the *vacatur*." Waimana argues that (1) *vacatur* of the underlying decision violated its due process and equal protection rights, (2) *vacatur* of the underlying decision was not in the public interest, (3) State appellees breached the public trust, (4) the court lacked authority to determine Waimana's standing, and (5) the court erred in holding that Waimana lacked standing in Civ. No. 02–1–0068K (KDC, Cooper, and Ratliff's appeal to the court concerning the extension of time).

Four answering briefs have been filed—one by KDC, Ratliff, and Cooper,[14] and the remaining three by HELCO,[15] BLNR,[16] and DHHL.[17] Essentially, the appellees maintain that (1) Waimana lacked standing to oppose the motion to vacate, (2) Waimana was precluded from relitigating the issue of standing to appeal pursuant to the doctrine of res judicata or collateral estoppel, (3) Waimana waived its standing argument by not appealing the 1994 remand order which determined Waimana lacked standing to challenge CDUA HA–487A, (4) Waimana does not have a legitimate due process interest and, in any

event, it received substantial due process before the court on the motion to vacate, (5) the court's finding that the settlement and *vacatur* was in the public interest was amply supported by the record, and (6) State appellees did not breach the public trust.

In reply, Waimana maintains that (1) "[Waimana's] standing is not determined by the [court's] nunc pro tunc ruling in an unrelated civil action," (2) "the standing issue was not timely raised below," (3) "[Waimana] was an aggrieved party," (4) "[Waimana] did not receive due process in Civil No. 02–1–0068K," (5) there is a "need for precedence" to assist future litigants, and (g) "the public interest is not best served where a lower court approves a settlement implicating state and federal rights without first consulting the Keahole community as a whole." Waimana requests that this court reverse the *vacatur* and reinstate the proceedings in S.Ct. No. 25446 (which arose from Civ. No. 02–1–0068K) for final adjudication.

## V.

The issue of standing implicates this court's jurisdiction, and, therefore, must be addressed first. Because standing is a jurisdictional issue that may be addressed at any stage of a case, an appellate court has jurisdiction to resolve questions regarding standing, even if that determination ultimate-

---

14. Specifically, KDC, Ratliff, and Cooper assert that (1) "the [court] did not deny Waimana due process," (2) "the [court] did not deny Waimana equal protection," (3) "Waimana lacked standing," (4) "the [court] had the authority to determine Waimana's standing below," (5) "vacatur is in the public interest," (6) "the vacatur and settlement agreement is the only vehicle by which the public's interest could be and can be vindicated," (7) "vacatur does not jeopardize any judicial interest for the finality of judgments," (8) "the state agencies have not breached their trust or other statutory obligations," and (9) "[Hawai'i Administrative Rules (HAR)] Title 13, Chapter 5 and Chapter 343, HRS do not apply."

15. In particular, HELCO argues that (1) "[Waimana] lacks standing to bring this appeal, and it must be dismissed for lack of appellate jurisdiction," (2) "although [Waimana] has no legitimate due process interest in this proceeding, it received substantial due process before the [court] in connection with the motion to vacate," (3)

"the [court's] finding that the settlement and vacatur was in the public interest was amply supported by the record, was not 'clearly erroneous' and must be affirmed," and (4) "the [S]tate appellees acted properly and responsibly with respect to the settlement, and did not 'breach the public trust.'"

16. Specifically, BLNR argues that (1) "[Waimana] lacks standing to bring this appeal," (2) "the vacatur of the order reversing [BLNR's] decision was not a violation of [Waimana's] due process or equal protection rights," and (3) "the [S]tate appellees did not breach their public trust duties by participating in the settlement agreement."

17. In its answering brief, DHHL maintains that (1) "[Waimana]" lacks standing to appeal the [court's] first amended final judgment," (2) "the [court] correctly found no due process violation," and (3) "vague and unsupported references to the public trust doctrine do not provide a basis to over turn the [court's] decision."

ly precludes jurisdiction over the merits.[18] *United Pub. Workers, Local 646 v. Brown,* 80 Hawai'i 376, 379, 910 P.2d 147, 150 (App. 1996) ("[B]ecause standing is a jurisdictional issue that needs to be addressed at any stage of the case, . . . we have jurisdiction here on appeal, not of the merits, but for the purpose of correcting an error in jurisdiction." (Internal quotation marks and citations omitted.)).

■ "Generally, the requirements of standing to appeal are: (1) the person must first have been a party to the action; (2) *the person seeking modification of the order or judgment must have had standing to oppose it in the trial court;* and (3) such person must be . . . 'one who is affected or prejudiced by the appealable order.'" *Kepo'o v. Watson,* 87 Hawai'i 91, 95, 952 P.2d 379, 383 (1998) (quoting *Waikiki Malia Hotel, Inc. v. Kinkai Props., Ltd. P'ship,* 75 Haw. 370, 393, 862 P.2d 1048, 1061 (1993) (emphasis added)). In its 2003 *vacatur* order, the court ruled that Waimana did not have standing to oppose the motion to vacate inasmuch as the court had previously ruled in the 1994 remand order that (1) Waimana did not have a due process right entitling it to a contested case hearing on CDUA HA–487A and (2) Waimana never appealed that holding. These determinations negate the second prong of the *Kepo'o* test for standing to appeal. Thus, if we agree with the court that Waimana lacked standing to challenge the motion to vacate, Waimana would also lack standing to appeal here, thereby divesting this court of jurisdiction to entertain Waimana's remaining arguments.

By way of review, the 1994 remand order resolved Waimana's appeal concerning BLNR's failure to hold a contested case hearing before ruling upon CDUA HA–487A. The court remanded the CDUA for BLNR to hold a contested case hearing as requested by Ratliff and Cooper, but not as requested by Waimana. As mentioned before, with respect to Waimana, the court ruled, in conclusion no. 4, that "Waimana [did] not have a due process right to a contested case hearing because its economic interest [did] not constitute 'property' within the meaning of the due process clauses of the federal and state constitutions." In conclusion no. 8, the court determined that by "[n]ot having a right to a contested case hearing by statute, rule or by the constitution, Waimana lack[ed] standing to file [the appeal] pursuant to HRS Section 91–14(a)[.]"[19]

As the court noted in the 2003 *vacatur* order, Waimana never challenged conclusion nos. 4 and 8. Hence, Waimana's failure to appeal the 1994 remand order's issue of standing raises doubt as to its ability to contest the court's conclusions here.[20]

## VI.

■ An apparent waiver of the standing argument notwithstanding, Waimana was precluded from opposing the motion to vacate inasmuch as it was collaterally estopped from relitigating the issue of its standing to

18. In its reply brief Waimana argues that its standing in Civil No. 02–1–0068K and S.Ct. No. 25446 was not challenged by the parties or the court. Waimana appears to argue that the appellees are estopped "from now taking a position which is inconsistent with the one they have taken from the filing of Civil No. 02–1–0068K and up to and including October 2003." However, as indicated above, the question of standing implicates jurisdiction which may be addressed by a court at any time, regardless of any position taken by any party. *Waikiki Discount Bazaar, Inc. v. City & County of Honolulu,* 5 Haw.App. 635, 640, 706 P.2d 1315, 1319 (1985) (stating that "[t]he question of whether [a] plaintiff has standing to bring the action or to appeal its dismissal may be raised *sua sponte* by the court having jurisdiction over the case" and noting that "[t]he judiciary's ability to control its caseload by requiring plaintiffs and appellants to

have standing does not depend on the ability and desire of defendants and appellees to notice and raise the issue"). Accordingly, Waimana's judicial estoppel argument is not persuasive.

19. HRS § 91–14(a) (1993) provides, in relevant part, that "[a]ny person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]"

20. HELCO and DHHL argue that Waimana's failure to appeal the 1994 remand order constituted a waiver of the right to challenge the court's conclusion that Waimana lacked standing.

challenge decisions regarding CDUA HA–487A. This court has recognized that collateral estoppel is "an aspect of *res judicata.*" *Dorrance v. Lee,* 90 Hawai'i 143, 148, 976 P.2d 904, 909 (1999) (quoting *Foytik v. Chandler,* 88 Hawai'i 307, 314–15, 966 P.2d 619, 626–27 (1998)). "*[R]es judicata* and collateral estoppel . . . share the common goals of preventing inconsistent results, preventing a multiplicity of suits, and promoting finality and judicial economy." *Id.* at 148–49, 976 P.2d at 909–10. Collateral estoppel, or issue preclusion, "applies to a subsequent suit between the parties or their privies on a *different* cause of action and prevents the parties or their privies from relitigating *any issue* that was actually litigated and finally decided in the earlier action." *Id.* at 148, 976 P.2d at 909 (emphases in original).

> [T]he doctrine of collateral estoppel bars relitigation of an issue where: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Id.* at 149, 976 P.2d at 910; *Citizens for the Prot. of the N. Kohala Coastline v. County of Hawai'i,* 91 Hawai'i 94, 102, 979 P.2d 1120, 1128 (1999) [hereinafter, *Citizens* ]. The fourth prong of the collateral estoppel test is easily met here. Waimana, the party against whom collateral estoppel is being asserted, was a party, indeed the appellant, to the prior adjudication that resulted in the 1994 remand order. The remaining three prongs require greater analysis.

The first prong of the collateral estoppel test necessitates a comparison of the issue decided in the prior adjudication with the issue presented in the action in question. This prong is satisfied only where both issues are "identical." The standing issue resolved in the 1994 remand order was whether Waimana had standing to challenge BLNR's vote on CDUA HA–487A absent a contested case hearing. The standing issue presented here is whether Waimana had standing to chal-

lenge the motion to vacate the order reversing BLNR's decision to grant HELCO an extension of time under CDUP HA–487A. Although the first appeal addressed whether the CDUA could be approved at all and the second addressed one of the conditions of the CDUA, the standing issues pose the same question—whether Waimana has standing to challenge CDUA HA–487A. Additionally, the standing issues were raised in HRS § 91–14 agency appeals, which further supports a finding of identicalness. *Cf. Citizens,* 91 Hawai'i at 102, 979 P.2d at 1128 (holding that "the issue of standing to appeal an agency decision under HRS § 91–14, decided in [a] prior agency appeal, is not 'identical' to . . . [t]he issue of . . . standing to pursue an action for declaratory relief under HRS § 632–1"). Hence, the question of standing resolved in the 1994 remand order and the question of standing presented by the 2003 motion to vacate were "identical," satisfying the first prong of the collateral estoppel test.

As to the second prong, if the party against whom collateral estoppel is being asserted was given "the opportunity to fully" litigate the issue, "the final judgment from that proceeding [is deemed to have been] 'on the merits.' " *Dorrance,* 90 Hawai'i at 150, 976 P.2d at 911 ("Where a party, . . . had the opportunity to fully defend herself against claims of negligent driving—the same issue here—the final judgment from that proceeding was 'on the merits.' "). As previously mentioned, Waimana appealed to the court in Civ. No. 94–123K, challenging BLNR's decision to hold a vote on CDUA HA–487A before completing a contested case hearing.

As the appellant before the court, Waimana filed briefs and participated in the October 31, 1994 oral argument on the matter. Finding no. 20 of the 1994 remand order, which describes Waimana, references Waimana's opening brief and an affidavit by its counsel. Conclusion no. 5 of the 1994 remand order also cites to Waimana's reply brief. These references to Waimana's briefs indicate that the court considered Waimana's arguments to render its 1994 decision on standing. Thus, not only did Waimana have ample opportunity to assert its bases for standing, but the court "heard" its argu-

ments. Accordingly, the December 5, 1997 final judgment flowing from the 1994 remand order denying standing was "on the merits."

Finally, the third prong of the collateral estoppel test inquires as to whether the issue decided in the prior adjudication was "essential" to the final judgment. In *Dorrance,* this court held that the issue of negligence was "essential to the earlier judgment[ ] inasmuch as it *established liability* for [the plaintiff's] injuries." 90 Hawai'i at 150, 976 P.2d at 911 (emphasis added). Likewise here, the issue of Waimana's standing to contest CDUA HA–487 was "essential" to the December 5, 1997 final judgment of remand. By determining Waimana did not have standing in the 1994 remand order, the court, in order to avoid dismissal of Cooper's and Ratliff's interests "due to [Waimana's] dismissal from [the] action, . . . confer[red] standing on Cooper and Ratliff as '*de facto* Appellants[.]' " This designation, in turn, allowed the court to remand CDUA HA–487A for a contested case hearing to correct BLNR's denial of Cooper's and Ratliff's constitutional due process rights. Hence, the underlying determination that Waimana lacked standing was "essential" inasmuch as it ultimately led to the determination that Cooper and Ratliff were entitled to a contested case hearing. Therefore, all four prongs of the *Dorrance* test being satisfied, Waimana was collaterally estopped from relitigating the standing issue.

BLNR observes that if Waimana "does not have standing to contest HELCO's underlying CDUA, it does not have standing to appeal a decision of the Board relating to one of the conditions of the same CDUA." We believe BLNR's contention is correct. *See Kepo'o,* 87 Hawai'i at 95, 952 P.2d at 383 (holding that in order to have standing to appeal, "the person seeking modification of the order or judgment must have had standing to oppose it in the trial court"). Because Waimana does not satisfy the second requirement of *Kepo'o,* it lacks standing to appeal. Accordingly, the court was correct to conclude that Waimana did not have standing to challenge the 2003 motion to vacate "*as a matter of law.*" (Emphases added.)

## VII.

■ Turning to Waimana's specific arguments with regard to standing, Waimana relies on the language of the December 5, 1997 judgment which states, "Judgment is entered *nunc pro tunc* to November 9, 1994 and is limited to the disposition of issues before the [c]ourt as of November 9, 1994." Waimana argues that "the 1994[r]emand [o]rder, even if correct, was limited 'to the disposition of issues before the [c]ourt as of November 9, 1994[.']" It reasons that

> [t]he cases have consistently emphasized that the power of courts to enter judgments *nunc pro tunc* is limited to giving its judgments proper *retroactive* effect. . . . It is clear that reliance upon the 1994[r]emand order in this matter was eliminated by the December [5], 1997 Judgment in Civil No. 94–123K. *There is absolutely no authority supporting the lower court's prospective application of a nunc pro tunc order in Civil No. 02–1–0068K.*

(Citations omitted.) (Some emphases in original and some added.)

■ A "*nunc pro tunc* order relates back to the original date of the matter it affects." *Poe v. Hawai'i Labor Relations Bd.,* 98 Hawai'i 416, 423, 49 P.3d 382, 389 (2002) (Acoba, J., dissenting).

> The term *nunc pro tunc* signifies or means "now for then" or that a thing is done now that shall have the same legal force and effect as if done at the time it ought to have been done. The doctrine seems to apply to delays of the court and not to premature actions of the parties. Where through no fault of the complaining party some act which the court must perform is not done at the time it ought to be done, the court, in the interest of justice, may and should presently do or perform that act as of the date it should have been done.

*Makainai v. Lalakea,* 24 Haw. 518, 522 (1918) (citation omitted). Hence, the court's judgment "*nunc pro tunc* " indicates that the three-year lapse between the 1994 remand order and the December 5, 1997 judgment was not due to fault of the parties. The inclusion of the "*nunc pro tunc* " language had the effect of making the judgment relate back to November 9, 1994, as if the judgment

had been rendered on that date. The *nunc pro tunc* judgment did not, as Waimana contends, eliminate future reliance on the 1994 remand order. Indeed, none of the cases cited by Waimana support its position that judgments *nunc pro tunc* have only "retroactive effect." [21] As HELCO observes, adopting Waimana's position "would result in the anomalous situation of having a court conform a judgment or order to 'speak the truth' yet being unable to prospectively enforce that very same order or judgment."

Additionally, the language in the judgment "limit[ing] . . . the disposition of issues before the [c]ourt as of November 9, 1994" was apparently included to specify that judgment was final as to the issues resolved in the 1994 remand order only, given the existence of subsequent issues to be determined on remand. Inasmuch as Waimana's standing was one of the issues so resolved in the 1994 remand order, that issue was subject to the December 5, 1997 final judgment and, as discussed *supra*, could not be relitigated.

Waimana also contends that the court lacked authority to determine the issue of its standing, arguing that "[i]t is plain on its face that [this court's October 14, 2003] order of remand [in S.Ct. No. 25446] was limited in scope and that the trial court exceeded its authority by addressing the newly-raised standing issue" in its 2003 *vacatur* order. To reiterate, this court's October 14, 2003 order of remand stated, in pertinent part, that "[w]ithin sixty days from the date of this order, the circuit court shall enter its order on the HRCP Rule 60(b) motion to vacate the [October 3, 2002] order and [November 7, 2002] judgment at issue in this appeal." Upon remand, KDC, Ratliff, Cooper, and DHHL filed a motion to vacate the October 3, 2002 order reversing BLNR's March 25, 2002 decision and the November 7, 2002 final judgment on appeal. HELCO, BLNR, and DLNR filed joinders to the motion. Waimana then filed a memorandum in opposition to the motion to vacate and joinder. Waimana also participated in the November 10, 2003 oral argument on the motion.

Given that Waimana was contesting the motion to vacate, the court was compelled to address Waimana's position in order to comply with this court's October 14, 2003 order of remand for the court to consider *vacatur* under HRCP Rule 60(b). Inasmuch as a court may assess standing, a jurisdictional question, at any stage of a case, *see Gustetter v. City & County of Honolulu,* 44 Haw. 484, 490, 354 P.2d 956, 959 (1960) (stating that "[t]he question of jurisdiction is always open and can be raised at any time" (internal quotation marks and citation omitted)), the court had the prerogative to address that issue in order to reach its determination on the motion to vacate. Contrary to Waimana's assertion, the court, then, did not "exceed[ ] its authority" in addressing Waimana's standing.

■ Waimana's final argument with regard to the standing issue is that this court "must look to [Waimana's] standing as it existed *at the time of the vacatur,* and during the time in which [Waimana] was a named party to both Civil No. 02–1–0068K and S.Ct. No. 25446." (Emphasis in original.) Waimana contends that "[b]etween 1994 and 1995, [it] negotiated an agreement with DHHL to provide telecommunication services to all DHHL properties throughout the State," including a 153–acre parcel adjacent to the Keāhole power plant site. As such, argues Waimana,

[t]he 1994[r]emand [o]rder was filed before [Waimana] was granted the exclusive license. Therefore, in Civil No. 02–1–

---

21. Waimana cites to *Wong v. Wong,* 79 Hawai'i 26, 897 P.2d 953 (1995), *City & County of Honolulu v. Caetano,* 30 Haw. 1 (1927), and *Makainai, supra.* However, *Wong* and *Caetano* did not address judgments or orders *nunc pro tunc.* To the extent that *Caetano's* discussion on amendments of judgment "for the purpose of making the record speak the truth" is analogous, that opinion did not bar prospective application of such amendments. 30 Haw. at 6. Finally, *Makainai* addressed the standard for entering orders *nunc*

*pro tunc, see* 24 Haw. at 521 (opining that "[b]efore one has the right to invoke the exercise of this power it should be made to appear affirmatively that the delay was occasioned either by the court or the opposite party and not by the complaining party[ ]"), but it did not circumscribe prospective application of such orders. Accordingly, these cases do not support Waimana's contention that judgments and orders *nunc pro tunc* are limited to retroactive application.

0068K, which was filed approximately seven (7) years after [Waimana] was granted the license, the trial court was faced with entirely different circumstances, both factually and legally.

According to Waimana, "[t]he court, by relying on the 1994[r]emand [o]rder, failed to address the standing issue on the appropriate merits."

As previously mentioned, in conclusion no. 2 of the November 12, 2003 *vacatur* order, the court resolved that its earlier determination in the 1994 remand order was dispositive of the standing issue. Consistent with the first prong of the standing test in *Pub. Access Shoreline Hawaii v. Hawai'i County Planning Comm'n*, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) [hereinafter, *PASH* ],[22] conclusion no. 2 stated:

> [Waimana] does not have a due process right to a contested case hearing because its economic interests do not constitute "property" within the meaning of the due process clauses of the federal and state constitutions. [Waimana] has never appealed that holding; therefore the holding still stands on the issue of whether [Waimana] has standing to participate in this proceeding. This [c]ourt concludes, that, as a matter of law, it does not.

(Emphasis added.)

Regarding the showing a party must make to assert a due process right, it is well-settled that

> [t]he claim to a due process right to a hearing requires that the particular interest which the claimant seeks to protect be "property" within the meaning of the due process clauses of the federal and state constitutions. A "property interest" is not limited to "the traditional 'right-privilege' distinction, . . . *but also includes a benefit which one is entitled to receive by statute." "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'"*

*Bush v. Hawaiian Homes Comm'n*, 76 Hawai'i 128, 136, 870 P.2d 1272, 1280 (1994) (brackets and citations omitted) (emphasis added). Waimana apparently maintains that the 1995 exclusive telecommunications services license, executed after the 1994 remand order, constituted "property" which entitled Waimana to a hearing, thereby giving rise to a basis for standing to contest the motion to vacate.[23]

First, the exclusive license, though executed after the 1994 remand order, is nonetheless the type of "economic" interest rejected by the court as being insufficient for standing purposes. To reiterate, in conclusion no. 5 of the 1994 remand order, the court stated that "as an entity neither physically located near the site of HELCO's proposed expansion nor whose purpose is to protect environmental or Hawaiian interests, Waimana's interest in contesting the CDUA appears to be purely economic[.]" In conclusion no. 6, the court determined that "Waimana does not have a due process right to a contested case hearing because its economic interest does not consti-

---

22. In order to invoke the court's appellate jurisdiction under HRS § 91–14, a would-be appellant must meet four requirements:

> [F]irst, the proceeding that resulted in the unfavorable agency action must have been a "contested case" hearing—*i.e.,* a hearing that was 1) "required by law" and 2) determined the "rights, duties, and privileges of specific parties"; *second,* the agency's action must represent a "final decision and order," or "a preliminary ruling" such that deferral of review would deprive the claimant of adequate relief; *third,* the claimant must have followed the applicable agency rules and, therefore, have been involved "in" the contested case; and *finally,* the claimant's legal interests must have been injured—*i.e.,* the claimant must have standing to appeal.

*Pub. Access Shoreline Hawaii v. Hawai'i County Planning Comm'n*, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) (citation omitted) (emphases added).

23. Waimana arguably waived the argument that it had a constitutionally protected property interest in the exclusive license. The exclusive license was executed on May 9, 1995. The 1994 remand order was not reduced to final judgment until December 5, 1997. Hence, Waimana had two years to raise its due process argument before the court entered judgment. Again, Waimana never appealed the court's conclusion in the 1994 remand order that it lacked standing to appeal BLNR's decision and, therefore, that order remains final.

tute 'property' within the meaning of the due process clauses of the federal and state constitutions[.]"

These conclusions were based on the court's finding no. 20 that "Waimana is a native Hawaiian entity, an economic competitor of HELCO, an independent power producer organized under the laws of the State of Hawaii that is seeking a purchase power agreement ... and is a lessee of property owned by [DHHL] in Kawaihae, S. Kohala, where it plans to develop a generator station." Waimana does not explain how its current exclusive license is different from the economic interests delineated in finding no. 20. Waimana concedes that it must demonstrate "a legitimate claim of entitlement" to the license to have a property interest in it requiring due process. However, the entirety of Waimana's argument to establish that entitlement is as follows:

In 1994, DHHL acquired a 153-acre parcel adjoining HELCO's Keahole site. ROA:2758. [Waimana] is a native Hawaiian corporation, recognized by DHHL, whose business endeavors inherently concern the welfare and betterment of native Hawaiians. Between 1994 and 1995, [Waimana] negotiated an agreement with DHHL to provide telecommunication services to all DHHL properties throughout the State of Hawaii. ROA:2949–2957. Appellee DHHL issued the license pursuant to Section 207(c)(1)(A)[24] of the Hawaiian Homelands Commission Act and [Hawai'i Administrative Rules (HAR)] § 10–4–21.[25] ROA:2949. In the lease, DHHL ("Leasor") stated that the Leasor

"believes and intends that the issuance of this Exclusive Benefit LICENSE will also fulfill the purpose of advancing the rehabilitation and the welfare of native Hawaiians." ROA:2950. This exclusive statutory license extends to the DHHL 153–acre parcel which abuts the northeastern corner of HELCO's present Keahole power plant site. Id. The adjacent DHHL parcel will be made available to [Waimana] to provide telecommunication services under its lease. ROA:2949. [Waimana] has both a statutory entitlement and obligation to provide these services to all DHHL land, including DHHL-held at Keahole.

Waimana's argument consists largely of facts and fails to show why it is entitled to the license. Further, Waimana's conclusory statement that it has a "statutory entitlement" to the license is both unsupported and incorrect. The plain language of the provisions Waimana relies on in Section 207(c)(1)(A) of the Hawaiian Homelands Commission Act and HAR § 10–4–21 does not provide a "statutory entitlement" to any entity which may be granted a license pursuant to them. In fact, these provisions reveal that DHHL in actuality has discretion to grant such licenses as well as discretion to determine the terms and conditions of any lease granted.[26] It is well settled that when a governmental agency has discretion in granting a license, parties such as Waimana do not have a legitimate claim of entitlement. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir.2005) (stating that "a statute that grants the reviewing [govern-

**24.** Section 207(c)(1)(A) of the Hawaiian Homelands Commission Act, entitled "Leases to Hawaiians, licenses," provides:

(c)(1) The department is authorized to grant licenses as easements for railroads, telephone lines, electric power and light lines, gas mains, and the like. The department is also authorized to grant licenses for lots within a district in which lands are leased under the provisions of this section, for:
(A) Churches, hospitals, public schools, post offices, and other improvements for public purposes.

**25.** HAR § 10–4–21 states in relevant part:

(a) Applications for licenses shall be made in writing and shall state the applicant's status,

type and location of the land desired, proposed use of the land, the services or facilities to be provided and the term of the license.
(b) The department may negotiate the issuance of a license. The department shall determine such terms and conditions of a license as it deems prudent, reasonable, and proper and in accordance with this chapter and subject to the commission's approval.

**26.** We also note that in its answering brief, DHHL argues that Waimana "is no different than any of the other vendors that DHHL contracts with to provide services to DHHL developments." This statement, which Waimana does not dispute in its reply brief, supports our conclusion that DHHL had authority and discretion to contract with Waimana.

mental] body unfettered discretion to approve or deny [a state operating license] application does not create a property right"); *Allocco Recycling, Ltd. v. Doherty,* 378 F.Supp.2d 348, 366 (S.D.N.Y.2005) (concluding that "when an agency has substantial discretion under state or local law to grant or deny a license or permit, the plaintiff has no legitimate claim of entitlement"); *Gabris v. New York City Taxi & Limousine Comm'n,* 2005 WL 2560384 (S.D.N.Y.2005) (holding that "[defendant] is vested with broad discretion to grant or deny a license application, which forecloses plaintiff[ ] from showing an entitlement to one"). *Cf. Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (opining that a non-tenured teacher did not have a property interest or entitlement to re-employment, and therefore could be terminated without due process).

Waimana maintains that "as a native Hawaiian corporation[, it] is given, by law, preferential treatment for the use of Hawaiian home lands, over non-Hawaiian entities." In support of its assertion, Waimana relies on article XII, section 4 [27] and article XVI, section 7 [28] of the Hawai'i Constitution. The plain language of these constitutional provisions does not directly support Waimana's contention that it is deprived of a property right and Waimana has not directed this court to any case law or statutory authority to support its interpretation of these provisions. Second, Waimana's articles of incorporation state that the company's primary purposes are to produce energy and conduct financial transactions in furtherance of that purpose. The articles do not mention any purpose to benefit native Hawaiians. Therefore, Waimana fails to establish that the ex-clusive license constitutes "property" which would entitle it to due process protection.

▪ Second, assuming the exclusive license constituted "property" for due process purposes, Waimana does not establish how its license would be affected by the Keāhole expansion project. In other words, Waimana does not establish sufficient injury, the fourth element of the *PASH* test. Pursuant to *PASH,* Waimana must "demonstrate that its ... interests were injured." 79 Hawai'i at 434, 903 P.2d at 1255 (quoting *Pele Def. Fund v. Puna Geothermal Venture,* 77 Hawai'i 64, 69, 881 P.2d 1210, 1215 (1994)) (brackets omitted). Generally, whether a party has standing is determined by the three part "injury in fact" test: "(1) he or she has suffered an actual or threatened injury as a result of the defendant's wrongful conduct, (2) the injury is fairly traceable to the defendant's actions, and (3) a favorable decision would likely provide relief for a plaintiff's injury." *Bush v. Watson,* 81 Hawai'i 474, 479, 918 P.2d 1130, 1135 (1996) (citation omitted); *see also United Pub. Workers,* 80 Hawai'i at 380 n. 3, 910 P.2d at 151 n. 3 (listing the elements of the "injury in fact" test as "1) an actual or threatened injury, which 2) is traceable to the challenged action, and 3) is likely to be remedied by favorable judicial action"). The fact that Waimana now has an exclusive license to provide telecommunications services to land adjacent to the Keāhole expansion project site does not "demonstrate" injury. As BLNR observes, Waimana "has not alleged that its license agreement with DHHL has been breached or that it has been deprived of any property. There is no indication that the generator expansion project will affect DHHL's plans to develop its neighboring property." Moreover, while DHHL may

---

27.  Article XII, section 4 of the Hawai'i Constitution, entitled "Public Trust," provides that:

> The lands granted to the State of Hawaii by Section 5(b) of the Admission Act and pursuant to Article XVI, Section 7, of the State Constitution, excluding therefrom lands defined as "available lands" by Section 203 of the Hawaiian Homes Commission Act, 1920, as amended, shall be held by the State as a public trust for *native Hawaiians and the general public.*
(Emphasis added.)

28.  Article XVI, section 7 of the Hawai'i Constitution, entitled "Compliance with Trust," provides that:

> Any trust provisions which the Congress shall impose, upon the admission of this State, in respect of the lands patented to the State by the United States or the proceeds and income therefrom, shall be complied with by appropriate legislation. Such legislation shall not diminish or limit the benefits of *native Hawaiians* under Section 4 of Article XII.
(Emphasis added.)

have a constitutionally protected right in the 153–acre tract adjacent to the Keāhole power plant, "constitutional rights may not be vicariously asserted." *Kaneohe Bay Cruises, Inc. v. Hirata,* 75 Haw. 250, 265, 861 P.2d 1, 9 (1993) (citation omitted).

Based on the foregoing, the court was correct in determining that Waimana lacked standing to challenge the motion to vacate.

## VIII.

For the reasons stated herein, the court's November 28, 2003 first amended final judgment, vacating the October 3, 2002 order and November 7, 2002 final judgment, is affirmed.

Concurring Opinion by Circuit Judge DEL ROSARIO, with whom ACOBA, J., joins.

In my view, Waimana's argument that the settlement agreement, which was reviewed and accepted by the court, and the 2003 *vacatur* order, which was entered by the court, are contrary to law, and therefore unenforceable, also necessitates discussion.

Waimana appears to argue that even if it lacks standing to oppose the motion, this court should still conclude that the *vacatur* was improper based on the effects on non-parties, contending that "when considering whether to grant *vacatur* in order to facilitate a post-judgment settlement, a court cannot assume that only the litigants have an interest in the judgment. Instead, a court must recognize that its judgment may have implications for parties not directly before it." In this regard, Waimana attacks the integrity of the court, the judicial system, and the governmental agencies involved in this case. Waimana asserts that:

> Another major concern is that settlement conditioned upon *vacatur* places in issue the integrity of the judicial process.... *The concern is that the very purpose and integrity of the judicial system is at stake when courts vacate decisions to assist settlements....* [Public] *trust can be seriously undermined if judgments and decisions are vacated purely on the basis of the parties' settlement arrangement because the public will perceive courts and their precedent [as] "for sale."...* In short, public respect for the courts erodes when parties who lose at the trial level can, in effect, purchase the nullification of the adverse judgment at the appellate level.

(Emphasis added.) In a footnote, Waimana argues the following:

> In a recent report, prepared for the Judiciary, State of Hawaii, the perceptions of the general public regarding the Judiciary were made known. *The primary perception was that the Hawaiian courts are not open "because many trial decisions are perceived to have resulted from 'back room deals' ... out of the public view."*

(Emphasis added.) (Citation omitted.) Waimana also maintains that the governmental agencies have breached their public duty and the public trust by agreeing to the settlement, and implies that this court would be abdicating its responsibility as an appellate court if it does not find that *vacatur* was an abuse of the court's discretion.

Further, Waimana appears to challenge enforcement of the settlement agreement and the 2003 *vacatur* order. Specifically, Waimana maintains that expansion of the Keahole Generating Station by way of the settlement agreement is prohibited by law:

> *The [Environmental Impact Statement (EIS)] completed in 1994, for HELCO's substantially different project, does not cover construction of the Keahole project, which is the subject of the Settlement Agreement.* ... HELCO does not have a CDUP for the redesigned Keahole project. HELCO cannot obtain an appropriate CDUP as a matter of procedure, without an EIS. *Finally, HELCO, as a matter of law, cannot construct within the statutory deadline recognized by the lower court in its reversal of the BLNR extension.* ... *The settlement is conditioned upon State agency approvals for changes and allowances which are prohibited by numerous federal and state laws.* ... While HELCO's CDUP was *pending,* the legislature enacted Act 270 ... The change in law precluded the construction of a fossil-fuel based power plant on conservation

land.... *HELCO cannot legally expand the Keahole facility pursuant to the settlement reached with the State Appellees. ... It is without question that the law in force "hereinafter" forbids the construction of HELCO's power plant on conservation land. ... The State Appellees, however, agreed to the settlement in circumvention of this law.*

(Some emphases added and some in original.) I believe these points must be addressed.

### A.

First, Waimana asserts that *vacatur* of the underlying decision was not in the public interest. As sub-points to this argument, Waimana contends that (1) the appellees "actively sought to moot the appeal in S.Ct. No. 25446[,]" (2) "[b]y failing to address the settlement on the merits and as insisted upon by [Waimana], the lower court did not serve the interest of the public trust as required by law[,]" (3) the "settlement conditioned upon *vacatur* places in issue the integrity of the judicial process[,]" (4) *vacatur* ignores the "social value of judicial precedents[,]" and (5) "[t]he [s]ettlement [a]greement circumvents regulatory requirements and protections."

As set forth previously, the court vacated the October 3, 2002 order and November 7, 2002 judgment pursuant to HRCP Rule 60(b) as indicated in the following conclusions:

4. HRCP Rule 60(b) provides that:

    On a motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons:.... (5) ... It is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of judgment.

5. *This [c]ourt does not vacate its Orders lightly. A court may vacate a judgment "whenever that action is appropriate to accomplish justice."* In Re Hana Ranch Co., 3 Haw.App. 141, 642 P.2d 938 (1982).

6. Rule 60(b) "may be utilized to seek the vacation of a judgment on the ground that the case has been settled so that it would not be equitable to have it remain

in effect ..." *Wright, Miller & Kane, Federal Practice and Procedure; Civil 2d § 2863.*

7. This [c]ourt finds that the parties to this agency appeal, pursuant to this Court's order compelling mediation in the main enforcement action, Civ. No. 97–017K, *have worked diligently* to resolve their differences regarding the Keahole expansion project, and the agency appellants have rescinded their objections to the completion of the project. As such, there is no present case or controversy, the issues in this agency appeal are now moot, and *it is no longer equitable that the reversal order and final judgment have prospective application.*

8. *In addition, the [c]ourt finds that vacating the [c]ourt's previous Order is in the public interest,* as the parties have agreed to enhanced air quality protection, reduced noise mitigation, and reduced visual impact, as well as water and solar energy benefits for DHHL, that would not otherwise have been achieved.

(Emphases added.)

Much discretion is afforded to a trial court in deciding whether to set aside a judgment under HRCP Rule 60(b).

It is well-settled that the trial court has a very large measure of discretion in passing upon motions under Rule 60(b) and its order will not be set aside unless we are persuaded that under the circumstances of the particular case, the court's refusal to set aside its order was an abuse of discretion.

An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party-litigant.

*Citicorp Mortgage, Inc. v. Bartolome,* 94 Hawai'i 422, 428, 16 P.3d 827, 833 (App.2000) (internal quotation marks and citations omitted). *See State v. Hawaiian Dredging Co.,* 50 Haw. 49, 50, 430 P.2d 319, 321 (1967) (noting that "the trial court has discretion to grant or deny a motion to reopen under

[HRCP] Rule 60(b)[ ]" and that "[n]o abuse of discretion has been shown on the part of the trial judge in denying the motion to reopen[ ]").

Waimana relies on *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), to argue that the "Supreme Court of the United States has established a rule disfavoring *vacatur* based upon post-judgment settlement, absent exceptional circumstances." Although *Bonner Mall* held "that mootness by reason of settlement does not justify vacatur of a judgment under review" absent "exceptional circumstances[,]" [1] *id.* at 29, 115 S.Ct. 386, that case is not applicable here. The issue in *Bonner Mall* was "whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought." *Id.* at 19, 115 S.Ct. 386. Hence, *Bonner Mall's* "exceptional circumstances" test is the standard by which *appellate courts* determine whether *vacatur* of a lower court decision is proper. In other words, *Bonner Mall* would control if *this court* had vacated the 1994 remand order. *See Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1169 (9th Cir.1998) (restricting *Bonner Mall* to situations where "the Supreme Court itself decides whether to vacate a lower court decision," and noting that the "Court did not discuss the proper standard at the district court level"). However, as previously discussed, on October 14, 2003, this court remanded S.Ct. No. 25446 for the court to consider *vacatur* of its own decision.[2]

"According to post-*Bonner Mall* Ninth Circuit decisions," the "court below" may vacate "its own judgment using" an "equitable balancing test even" where the parties have "mooted their case by settlement." [3] *American Games*, 142 F.3d at 1169. *See Ringsby Truck Lines, Inc. v. W. Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982) (refusing to vacate the district court's judgment where the parties, by settlement, agreed to such a *vacatur*, but leaving it to the district court to "balance between the competing values of right to relitigate and finality of judgment"). The Ninth Circuit has deemed it "appropriate that a district court should enjoy greater equitable discretion when reviewing its own judgments than do appellate courts operating at a distance." *American Games*, 142 F.3d at 1170.

Thus, contrary to Waimana's assertions, a court may vacate its own judgment upon a balancing of the equities pursuant to *American Games*, as opposed to a finding of "exceptional circumstances" which, pursuant to *Bonner Mall*, is the standard for appellate courts. Indeed, the balancing of equities standard is consistent with HRCP Rule 60(b)(5), the court's stated basis for ordering *vacatur*, which provides that "the court may relieve a party ... from a final judgment, order, or proceeding [if] ... (5) ... *it is no longer equitable* that the judgment should

---

1. *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), does not conclusively preclude *vacatur* where the parties have reached a settlement that renders an appeal moot. As the Court explained:

   [M]ootness by reason of settlement does not justify vacatur of a judgment under review. *This is not to say that vacatur can never be granted when mootness is produced in that fashion. As we have described, the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course.* It should be clear from our discussion, however, that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur—which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations we have discussed. *Of course[,] even in the absence of, or

   *before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b).*

   513 U.S. at 29, 115 S.Ct. 386 (emphases added).

2. The remand of S.Ct. No. 25446 was made pursuant to *Life of the Land v. Ariyoshi*, 57 Haw. 249, 252, 553 P.2d 464, 466 (1976) (holding that, "where an appeal is pending in this court[,]" HRCP Rule 60(b) motions "may be made and considered in the circuit court" and if "that court indicates that it will grant the motion, the appellant may then move in this court for a remand of the case").

3. Thus, Waimana's sub-point (1), emphasizing that the case was mooted by actions of the parties, is not persuasive.

have prospective application[.]" (Emphasis added.)

In that connection, it cannot be said that the court abused its discretion in determining that "it is no longer equitable that the reversal order and final judgment [entered March 25, 2002 and November 7, 2002, respectively] have prospective application." Waimana maintains that "[i]n vacating its judgment, the [court] did not examine the equities which included the presence of third party interests and the possibility that its judgment would have a preclusive effect on later litigation regarding the Keahole power plant, thus depriving the community as a whole of its constitutional rights to due process and equal protection." However, as it stated in conclusion no. 5, the court did "not vacate its [o]rders lightly."

Contrary to Waimana's assertions, the court balanced the equities inasmuch as it concluded that the parties "worked diligently to resolve their differences" and that *vacatur* would be "in the public interest[.]"[4] As to the public interest determination, the court specifically noted that "the parties have agreed to enhanced air quality protection, reduced noise mitigation, and reduced visual impact, as well as water and solar energy benefits for DHHL, that would not otherwise have been achieved."[5]

Waimana's concern that "under the terms of the settlement, the public is left with no direct vehicle to enforce the State Appellees' responsibilities" must be similarly rejected.

As the court determined in finding no. 6, HELCO has agreed to "processes [that] will allow all interested parties additional opportunities to provide input on the Keahole expansion project." According to finding no. 7, the "parties have also agreed [that] the parties to the settlement will comply with all federal, state, and county laws and regulations."[6]

Thus, Waimana inaccurately and prematurely presumes that *vacatur* "effectively gives HELCO *carte blanche* to pursue construction of a power plant, . . . which is substantially different than the project for which HELCO originally obtained a CDUP by default," the project would "fail to meet necessary criteria for approval of construction" as set forth in HAR § 13–5–40,[7] and the project "triggers the need for an Environmental Assessment, if not an Environmental Impact Statement" (EIS).[8] As HELCO maintains, "while the parties agreed to cooperate in effectuating the settlement, the parties also confirmed that the negotiated remedies and benefits were subject to 'obtaining necessary government permits and approvals,' and that the government agencies involved in the litigation 'shall retain their primary agency jurisdiction, as provided by law.'"

As for Waimana's concerns that the *vacatur* impairs the "integrity of judicial process" and "social value of judicial precedents,"[9] these are determinations initially allocated to the court's discretion when balancing the equities. *See American Games*, 142 F.3d at

4. Thus, Waimana's argument in sub-point (2) that the court failed to consider the interests of the public trust should be rejected.

5. The court's finding no. 4 explains that the settlement will "secure, by agreement, greater protections for the public interest than could be expected to be imposed solely by the Land Use Commission through its consideration of a petition to 'rezone' the land at issue from Conservation to Urban." Finding no. 5 lists the terms of the settlement that "provide significant and tangible benefits for the public." Waimana does not challenge these findings.

6. In its reply brief, Waimana asserts that "the [court] approved a settlement without any evidence of any prior compliance on the part of HELCO and without any input from the Keahole Community as a whole." Waimana does not elaborate on what "prior compliance" HELCO

has failed to meet. As indicated *infra*, the settlement recognized that government permits and approvals are required. Further, as indicated above, HELCO has agreed to processes which will allow for additional input from interested parties. As Waimana concedes, KDC, Ratliff, and Cooper participated in the settlement discussions and agreement. Waimana further fails to establish that any other member of the Keāhole community sought to provide input.

7. HAR § 13–5–40 explains when a public hearing "shall be held" and the process for conducting the hearings.

8. Hence, Waimana's sub-point (5) that the settlement "circumvents regulatory requirements and protections" should be rejected.

9. These are Waimana's sub-points (3) and (4).

1168 (confirming that "the district court can decide whether to vacate its judgment in light of the consequences and attendant hardships of dismissal or refusal to dismiss and the competing values of finality of judgment and right to relitigation of unreviewed disputes" (internal quotation marks and citations omitted)). Here, the court was cognizant of the seriousness of ordering *vacatur* of its prior decision, noting in its conclusion no. 5 that it "does not vacate its [o]rders lightly," but that it may do so to "accomplish justice."

Further, this court has acknowledged the strong public policy in favor of settlement of claims. *See State v. Gano,* 92 Hawai'i 161, 167, 988 P.2d 1153, 1159 (1999) (noting that "[t]he public policy of [Hawai'i] appellate courts favors the resolution of controversies through compromise or settlement rather than by litigation" (internal quotation marks and citation omitted)); *Gossinger v. Ass'n of Apartment Owners of Regency of Ala Wai,* 73 Haw. 412, 424, 835 P.2d 627, 633 (1992) (noting that public policy "favors the finality of negotiated settlements that avoid the costs and uncertainties of protracted litigation"); *In re Doe,* 90 Hawai'i 200, 208, 978 P.2d 166, 174 (App.1999) (concluding that "[a] settlement agreement will be enforced by our courts because public policy favors the resolution of controversies through compromise or settlement"). Given that the settlement resolved a decade-long dispute that had already engaged substantial judicial and agency resources and, in addition, apparently afforded greater protections for the public interest, the court did not abuse its discretion in granting the HRCP Rule 60(b) motion to vacate.

### B.

Next, Waimana contends that the *vacatur* deprived it of its rights to due process and equal protection. As to the due process claim, Waimana asserts that (1) "the record is clear that [Waimana] has clearly maintained property interests which arise from its rights to enforce conditions to HELCO's land grant (ceded lands) for the Keahole site, and its right as an established statutory beneficiary of Hawaiian Home lands to challenge the impact of any power plant proposed by

HELCO upon adjoining Hawaiian Home lands property[,]" and that (2) Waimana "was denied notice to challenge the proposed settlement reached in Civil No. 97–00017K."

As discussed *supra* in the discussion on standing, Waimana's "property interests" were specifically rejected by the court as not falling within the parameters of due process protection. The court determined in conclusion nos. 5 and 6 of the 1994 remand order, that "as an entity neither physically located near the site of HELCO's proposed expansion nor whose purpose is to protect environmental or Hawaiian interests, . . . Waimana does not have a due process right to a contested case hearing because its economic interest does not constitute 'property' within the meaning of the due process clauses of the federal and state constitutions[.]"

With respect to Waimana's notice argument, the court concluded in the 2003 *vacatur* order that Waimana "had a full and fair opportunity to participate in the mediation with all of the parties, but repeatedly declined." The record supports this determination. Although Waimana was not a party to Civ. No. 97–00017K, HELCO contacted Waimana's counsel in an April 26, 2003 letter to determine Waimana's position in light of the court's order "to mediate the legal disputes involving the expansion of the Keahole power plant." HELCO also contacted Waimana's president, Hee, and documented the conversation in an April 28, 2003 letter. According to the letter, Hee "view[ed] the[ ] settlement efforts as a waste of time." Although Waimana knew of the settlement negotiations ordered by the court, Waimana voluntarily chose not to participate in the mediation and, thus, its contention that it "was never contacted during the course of the expanded mediation until immediately prior to a status conference in Civil No. 97–00017K" is not persuasive.

Additionally, Waimana asserts that "[b]y pursuing a status conference in lieu of a HRCP Rule 60(b) motion[,] to properly address the bases upon which the [court] would determine its inclination on vacatur, [Waimana] was denied timely notice and meaningful

opportunity to state its position."[10] On September 17, 2003, the mediator notified Waimana that the court had scheduled a status conference for September 19, 2003. Waimana apparently maintains that two days' notice was insufficient. Waimana, however, participated in the status conference and upon this court's remand in S.Ct. No. 25446, filed a memorandum in opposition to the motion to vacate, filed a declaration of counsel and additional exhibits, participated in the hearing on the motion to vacate, and filed a "supplemental memorandum." Hence, inasmuch as the court accepted Waimana's briefs and allowed Waimana to participate in the hearing, Waimana was given due process.

As to Waimana's equal protection claim, other than explaining the purpose of the equal protection clauses of the state and federal constitutions and citing to cases that support the proposition that "parties must be given equal opportunities to present their case" (citing *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978)), Waimana does not elaborate on its statement that the *vacatur* "completely extinguished" its "equal protection right to procedural due process." Thus, it does not establish an equal protection violation.[11]

## C.

Finally, Waimana contends that the State appellees breached the public trust. It argues that (1) repeal of HRS § 183–41 and the enactment of HRS § 183C–4(e) "precluded the construction of a fossil-fuel based power plant on conservation land[,]" (2) the "Keahole project, if completed, will compromise the use and value of viable DHHL land adjoining the northeastern boundary of Keahole Station[,]" (3) the State appellees "did not consider nor evaluate any new or supplemental EIS to determine the proposed project's 'compatibility with land use plans and policies[,']" and (4) "the lower court failed to hold

---

10. In its reply brief, Waimana asserts that "the die was cast against [Waimana] when the lower court ruled its inclination to grant the non-existent HRCP Rule 60(b) motion based only on *oral representations and a bare and unsigned settlement agreement*," (emphasis in original), at a status conference on September 19, 2003. As stated *supra*, on October 17, 2003, KDC, Ratliff, Cooper, and DHHL filed a HRCP Rule 60(b) motion. Waimana appears to object to the fact that the court expressed its inclination to grant a HRCP Rule 60(b) motion without having the motion before it. Waimana claims that *Life of the Land* "anticipates that the [court] would have certified its 'inclination' upon a *fully briefed record*." (Emphasis in original.) *Life of the Land* does not discuss what a court should consider in ruling on a HRCP Rule 60(b) motion, or require a "fully briefed record" as Waimana suggests. As stated *supra*, *Life of the Land* refers to a procedure for granting Rule 60(b) motions in cases that are on appeal similar to what occurred in this case.

It is stated in that case that "the [HRCP Rule 60(b)] motion may be made and considered in the circuit court. If that court *indicates* that it will grant the motion, the appellant may then move in [the supreme court] for a remand of the case." 57 Haw. at 252, 553 P.2d at 466 (emphasis added). In actuality, and contrary to Waimana's argument, *Life of the Land* anticipates that trial courts may express their "inclination" to grant HRCP Rule 60(b) motions and allows parties to act accordingly. Furthermore, as recounted above, trial courts are given broad discretion in determining whether a judgment should be set aside under HRCP Rule 60(b).

Here the court entered findings of fact and conclusions of law in support of its order granting the motion and stated in conclusion no. 5 that it did not vacate its order "lightly." Waimana then fails to establish that the court abused its discretion in holding the status conference and in expressing its inclination to grant a HRCP Rule 60(b) motion.

11. Regarding due process and equal protection, in its reply brief, Waimana claims that

[t]here could be no due process where, as here, the [court] forced a settlement obtained in one action, which did not incorporate [Waimana's] rights, to vacate another separate and distinct action which did involve [Waimana] and its rights. Waimana has a constitutional right to have its claims adjudicated. Vacatur serves to block [Waimana's] equal protection rights to procedural and substantive due process.

First, it should be noted that the record is wholly devoid of any indication that the court "forced" a settlement in the instant case and Waimana has not directed this court to any support in the record for this assertion. Further, as indicated above, despite the fact that Waimana lacked a property interest in the instant case, Waimana did in fact receive due process because it joined in the status conference, participated in the hearing on the motion to vacate, and submitted documents and exhibits to the court regarding its position on the motion. Finally, as illustrated, Waimana fails to establish an equal protection violation or support its conclusory statement that it "has a constitutional right to have its claims adjudicated."

the 'settlement in principle' to a higher level of scrutiny."

The issue regarding the repealed HRS § 183–41, sub-point (1), was previously argued and resolved in *HELCO*. In *HELCO*, "Ratliff and KDC maintain[ed] that HRS § 183–41 was invalid and should not have been applied in [that] case because it was repealed in 1994, before the contested case hearing on HELCO's application." 102 Hawai'i at 265 n. 20, 75 P.3d at 168 n. 20. However, this court decided that, pursuant to HRS § 1–10 (1993) (governing the effect of repeal on accrued rights), because "HELCO submitted its application in 1992[,] ... the repeal of HRS § 183–41 did not affect HELCO's previously accrued rights." *Id.* Inasmuch as the instant appeal concerns the same CDUA that was filed in 1992, pursuant to *HELCO*, the repeal of HRS § 183–41 continues to be irrelevant. *Cf. Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 352 n. 8, 944 P.2d 1279, 1295 n. 8 (1997) (noting that the doctrine of the law of the case "states that a determination of a question of law made by an appellate court in the course of an action becomes the law of the case and may not be disputed by a reopening of the question at a later stage of the litigation").

As to sub-point (2), Waimana does not explain how plans for adjacent DHHL land will be "compromised" and, therefore, that argument is of no avail.

With respect to sub-point (3) concerning a supplemental EIS, it appears that HELCO's final EIS was accepted by DLNR at some time in 1993 or early 1994. *HELCO*, 102 Hawai'i at 262, 75 P.3d at 165. Should HELCO's plans fall outside the uses covered in that EIS, nothing in the settlement agreement bars the State appellees from requiring HELCO to prepare a new or revised EIS. Hence, contrary to Waimana's assertions, the State appellees have not failed to consider the necessity of a new or revised EIS.

As to sub-point (4), Waimana does not explain how the court failed to hold the settlement "to a higher level of scrutiny." On the contrary, as stated *supra*, based on the court's findings and conclusions, the court seriously considered the mediated settlement, determining that it would provide "significant and tangible benefits for the public."

Waimana's contention that the State appellees negotiated a settlement agreement in violation of law is not borne out by the record. The settlement agreement lists the permits HELCO is required to obtain for its expansion project. Waimana, then, has no basis for maintaining that the State appellees have relinquished their trust duties to regulate the project. Therefore, it has not been established that the State appellees have breached the public trust.